THE CITY OF ARGENTINE v. THE ATCHISON, TOPEKA, & SANTA FE RAILROAD COMPANY.

VIADUCT *over Railroad-track in City — Division of Cost.* A city of the second class is vested with power to construct at its own expense, or to require the construction by a railroad company at its expense, of a viaduct or bridge over railroad-tracks within the city, where the safety and convenience of the public make it necessary; and when it is deemed to be just that the cost of such a structure should be divided between the city and the railroad company, the city may contribute or bind itself to pay a share of such cost.*

---

* NOTE.—The liability for the cost of changing the grade of a street to prevent the crossing of a railroad at grade is the subject of annotation to *Kelly v. Minneapolis*, 26 L. R. A. (Minn.), 92.

*Error from Wyandotte District Court.*

ACTION by the *Railroad Company* against the *City of Argentine*. Judgment for plaintiff. Defendant brings the case to this court. The facts sufficiently appear in the opinion herein, filed October 5, 1895.

*J. G. Waters*, for plaintiff in error.

*A. A. Hurd, Mills, Smith & Hobbs*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought by the Atchison, Topeka & Santa Fe Railroad Company against the city of Argentine to recover $3,000, being a share of the cost of two viaducts constructed in the city of Argentine by the railroad company, and which the city had agreed to pay. It appears that, prior to to the settlement of Argentine, the railroad company had established large yards, with many tracks, at that location, and that afterward people settled and built homes on both sides of the railroad yards. Two streets were laid out and opened across the yards, which the inhabitants of the city used in going from one side of the yards to the other. When the city reached a population of 5,000, and had within its limits a smelter and a number of elevators, making a great deal of business in the yards, crossing over the same at grade was deemed to be inconvenient and dangerous. An ordinance was then adopted by the city directing the railroad company to construct a viaduct over all the railroad-tracks operated by it, at a point near a certain avenue to be selected by the city council, and which was to be 20 feet wide, and, with the approaches, would be about 1,338 feet long.

It was to be constructed according to certain plans and specifications which had been prepared, at an estimate cost of $15,000. A further provision was that the railroad company should also build a foot-viaduct over the same tracks at another point, and it was provided that, on the completion of both viaducts in accordance with the plans and specifications, the city of Argentine should pay to the railroad company $3,000 of the cost thereof. It was provided that on the completion of the viaducts they should be public highways, to be used by the public instead of the grade-crossings, and should be forever maintained and kept in repair by the city, without expense to the railroad company. Other provisions were made with respect to the change of the grade of the streets to correspond with the approaches to the viaducts, as well as for the reconstruction or widening of the same in certain contingencies, and for the laying of water- and gas-mains under the tracks of the railroad company. It was finally ordained that if, within 30 days after the passage of the ordinance, the railroad company should file in the office of the city clerk a written acceptance of the provisions of the ordinance, it should then become a contract between the city and the railroad company, binding upon both parties. Within the time limited the terms and conditions of the ordinance were accepted by the railroad company. The city selected the locations for the viaducts, and they were built by the railroad company in compliance with the provisions of the ordinance and with the plans and specifications which had been prepared, at an actual cost to the railroad company of about $15,700; and, if the usual charges for transportation of material were made, it would add to the amount named from $1,600 to $2,000. The city and its officers

knew of the building of the viaducts, and no legal steps were taken to prevent it, and since then the viaducts have been in constant use by the inhabitants and others for teams, vehicles and pedestrians. At a special election in the city, bonds to pay the $3,000 claim of the railroad company and for the construction of certain sewers and the building of a city hall, were voted upon. The bonds have been issued and sold for such purposes, taxes have been levied in the city to pay these bonds, and the sum of $3,000 is in the hands of the city treasurer, set apart as the viaduct fund, having been derived from the sale of the bonds voted for the purpose of paying the $3,000 claim of the railroad company. The claim was duly presented in writing by the railroad company to the mayor and council, with a full account of the items thereof, duly verified as required by law, but payment was refused by the city, when the present action was brought. The railroad company recovered the full amount claimed, and the city complains and presents the single proposition that it had no power to make the contract which was made with the railroad company.

Argentine is a city of the second class, and although there is no statute which in express terms provides for the building of viaducts in cities of that class, there appears to be ample authority for such a city to build or require the building of viaducts or bridges over railroad-tracks where the convenience and safety of the public make it necessary. In the act governing cities of the second class, authority is given to open and improve streets, avenues and alleys, and to build bridges within the city. (Gen. Stat. of 1889, ¶ 788.) It also provided that the city may provide for the passage of railways through the streets and grounds of the city, regulate depots, and depot-grounds, the

crossing of railway-tracks, the running of railway-engines, cars and trains within the limits of the city, and make any other and further provisions to prevent accidents at crossings and on the tracks of railways. (¶ 821.) In addition to these, there are provisions vesting the care, management and control of the city in the mayor and council, authorizing them to open, widen, extend, or otherwise improve the streets and avenues of the city, and to prevent all encroachments upon them, and granting authority to them to enact all such ordinances as they shall deem expedient for maintaining the good government and welfare of the city, its trade and commerce. (¶¶ 787, 811, 812, 824.) Under these general provisions, we think there is ample power in a city of the second class to construct or require the construction of viaducts over railroad-tracks. In addition to these, however, there in express authority given for the construction of *bridges.* In the more enlarged sense of that word, viaducts over railroad-tracks are included. Worcester defines the word "bridge :" "A pathway erected over a river, canal, road, etc., in order that a passage may be made from one side to the other." Webster defines it as "A structure, usually of wood, stone, brick or iron, erected over a river or other watercourse, or over a ravine, railroad, etc., to make a continuous roadway from one bank to the other." The last-named author-ito defines the word "viaduct" as "a bridge." According to modern usage the term "bridge" may be appropriately applied to the viaducts which were constructed by the railroad company, and we think it may he fairly said that the term was used in that sense in the statute. (Gen. Stat. of 1889, ¶ 788 ; *The State v. Gorham,* 37 Me. 461.)

It is conceded by the city that it had the power to

compel the railroad company to build the viaducts wholly at the expense of the company; and that the city can build them at its own expense, under the provisions mentioned, there can be little doubt. As the city may construct them entirely at its own expense, no reason is seen why it may not contribute a part of the expense of viaducts determined to be necessary. The questions of necessity and expediency of viaducts, the character and cost of those which the safety and convenience of the public may require, and the means of providing them, including what proportion of the expense should be borne by the city and what by the railroad company, are for the determination of the mayor and council, rather than the court. The fact that the city can compel the railroad company to build a viaduct upon certain conditions at its own expense does not prevent the city from sharing the expense under other circumstances where it is deemed to be just that a division of the expense should be made, and that question, like the others which have been mentioned, so far as the municipality is concerned, rests with the legislative authority of the city.

It is contended that the viaduct is not a public highway, but is constructed over the private property of the railroad company, and for this reason also the power of the city is questioned. The viaducts were to be constructed at a place to be designated by the city, and to connect with the streets on each side of the tracks and yards. They were supported by posts of iron, resting on foundations of masonry, braced with iron bolts and sway-rods, so as to make a safe and substantial structure. It was provided that the viaducts, when constructed, should be and remain public highways, for the use of the public. The railroad company having accepted the provisions of the

ordinance and constructed the viaducts over its yards has effectually dedicated the land as a public highway, and would be estopped from interfering with the easement so long as it is maintained as a public highway.

Our opinion is that the district court reached a correct conclusion in holding that the city had the power to contract with the railroad company for the construction of the viaducts, and that it is liable for the share of the cost of the same which it agreed to pay. It is unneccessary to determine the validity of the provisions as to future maintenance, and upon that question we express no opinion.

The judgment of the district court will be affirmed.

All the Justices concurring.