Kansas City Terminal Railway Company, a corporation, *Appellant*, v. City of Kansas City, Kansas, a municipal corporation; Clark E. Tucker, Francis W. Blake and Edward W. Becker, members of and constituting the board of commissioners of said city, *Appellees*.

No. 38,691

Union Pacific Railroad Company, a corporation, *Appellant*, v. City of Kansas City, Kansas, a municipal corporation; Clark E. Tucker, Francis W. Blake and Edward W. Becker, members of and constituting the board of commissioners of said city, *Appellees*.

(249 P. 2d 671)

Opinion filed November 8, 1952.

*Thomas M. Van Cleave,* of Kansas City, argued the cause, and *Horace F. Blackwell, Jr.,* and *John H. Lathrop,* both of Kansas City, were with him on the briefs for the appellant, in No. 38,690.

*T. M. Lillard,* of Topeka, argued the cause, and *O. B. Eidson, Philip H. Lewis* and *James W. Porter,* all of Topeka, and *N. E. Snyder,* of Kansas City, were with him on the briefs for the appellant, in No. 38,691.

*William H. Towers,* deputy city attorney, argued the cause, and *C. W. Brenneisen, Jr.,* city attorney, was with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: The plaintiff railroad companies each filed an action to enjoin enforcement of ordinances pertaining to the erection of a viaduct and to fixing of assessments for its cost. After the petitions were filed the defendant city filed its motions to strike certain allegations of the petitions and thereafter the trial court sustained the motions in part and the railroad companies perfected appeals to this court. After the appeals were perfected, each appellant filed its motion that the appeals be consolidated, as each presented the same legal questions, and those motions were allowed.

An examination of the pleadings discloses that each petition, for present purposes, contains the same allegations, although there is some difference in phraseology and in the arrangement and numbering of paragraphs. As a result the motions of the city directed against the petitions vary in form but not in substance. For the reasons given, we shall confine our review to the petition of the Union Pacific Railroad Company, and, for clarity in reference later, shall make reference to paragraph numbers.

Although stated at length in the petition, in substance, the following allegations were included:

1. Status of the plaintiff.

2. Status of the defendants.

3. That for many years prior to the passage of its ordinance No. 35,587 (October 21, 1948) and at the time it tore down and reconstructed it, the city owned and had full control of a viaduct on Central Avenue and had the right and power to tear it down and build a new one itself.

4. That in April, 1947, the city enacted its ordinance No. 34,771, which required the plaintiff company, the Missouri Pacific Railroad

Company and the Kansas City Terminal Railway Company to reconstruct the Central Avenue viaduct and upon their refusal the city brought a mandamus action in the supreme court against the plaintiff and others to compel such reconstruction, which relief was denied; that in the answers filed in that action, the defendants set forth the same facts and defenses as are now set forth and defendants have at all times been apprised thereof and that the railroad companies continued to rely on and persist in such defenses.

5. That on October 21, 1948, the city passed its ordinance No. 35,587, which required the three named railroad companies to reconstruct the then existing Central Avenue viaduct in accordance with plans described in the ordinance and to begin such reconstruction within sixty days, the cost to be borne by the three companies in stated proportions and provided that upon the failure of the railroads to so reconstruct said viaduct the city would proceed to reconstruct it, issue internal improvement bonds to pay for the same and levy special assessments against each of the railroad companies to pay the bonds and interest.

6. That prior to the letting of any contract the plaintiff and other railroads each gave to the city formal notices that they deemed the ordinance and its requirements imposing upon the three companies the entire cost of reconstructing the viaduct, to be arbitrary and unreasonable, unlawful and void and they disclaimed any obligation to comply with said ordinance.

7. Notwithstanding the notices, the city let a contract for the construction of the viaduct and on March 3, 1949, notified plaintiff and the other companies that an order had been issued to the contractor to proceed with the work.

8. On March 7, 1949, the president of the plaintiff company wrote a letter to the city clerk of the defendant city, acknowledging receipt of the city's notice, reiterated the position of the plaintiff and that plaintiff would resist any assessments for the cost of the viaduct and any attempt to impose a lien upon its property for the construction of the viaduct.

9. Notwithstanding the protests and disclaimers of liability, the defendant city began and thereafter completed reconstruction of the viaduct and on April 24, 1951, the city enacted its ordinance No. 37,183, levying special assessments upon all of the properties of the three railroads to pay the full cost of the construction of said viaduct, the total assessments aggregating $827,075.91, the sum of

$61,286.32 being levied against the plaintiff company; that in ordinance No. 35,587 the city was acting under G. S. 1949, 12-1634, and this action was commenced within less than thirty days after the passage and effective date of the assessment ordinance No. 37,183.

10. The new viaduct constructed under the above ordinance is the fourth to be erected at the same place in less than sixty years and the fourth viaduct in which during the same period the three railroad companies or some of them have been called upon by the city to pay by far the greater part of the expense of construction; that as a legal basis for constructing the third viaduct the city passed an ordinance on November 27, 1917, authorizing the execution of an agreement on behalf of the city, the Missouri Pacific Railroad Company, the Kansas City Terminal Railway Company and this plaintiff, containing recitals that the viaduct being built, with a bridge being constructed by the county, was being constructed so as to make a continuous highway from near the intersection of Park Avenue and Central Avenue to and across the Kansas river, the structure to be built so as to provide facilities for all kinds of traffic; that the viaduct contemplated was built in accordance with said agreement, the three railroad companies fully complied with the terms thereof and paid a portion of the cost of constructing the viaduct. Detailed figures show that the total was $220,309.09, of which the city paid $10,000, the Union Pacific paid $18,941.84, the balance being paid by other railway companies. It was further alleged that the agreement last mentioned further provided that the city should maintain the viaduct and two-thirds of the cost and expense of such maintenance should be paid by the railroad companies in certain stated proportions; that the three companies in all respects complied with their parts of the agreement but the city neglected the repair and maintenance of said viaduct which could have been repaired under said agreement and placed in condition to continue in use for a future period of thirty years, to the same height and width as the adjoining segments of said continuous viaduct both before and after the passage of ordinance No. 35,587; that such solution was suggested and offered by the railroad companies to the city and rejected; that the contract of November 27, 1917, was embodied in an ordinance duly enacted and said contract has never been abrogated nor terminated and any condition and state of disrepair of the viaduct was the fault of the city and not of the three railroad companies which were at all times ready, able and willing to comply with the terms of the agreement and

that the enactment of ordinance No. 35,587 is an impairment of the contract of November 27, 1917, and in contravention of article I, section 10, of the Constitution of the United States.

11. That the restoration and repair of the 1917 viaduct would have adequately taken care of all the traffic needs of the city for many years to come and for the remaining life of the viaduct for a period of some thirty years in the future at a vastly less expenditure of money than the cost of the new viaduct that has been built by the city.

12. That the traffic problems presented in this proceeding are broader than the local traffic of the defendant city and were not caused by the positions of the three railroads; that Wyandotte County has reconstructed a bridge across the Kaw river on two levels, one connecting streets at the approximate natural surface of the ground on each end of the bridge, the other at a higher level with which the new viaduct connects. As part of that bridge the county provided a complete system of approaches, the crossing of certain railroad tracks and an elevated structure at the west end of the bridge proper and extending west to the east line of the Missouri Pacific property, the bridge and approaches being more than 3,000 feet long. Said bridge and other structures, although within the limits of Kansas City, were reconstructed or reconditioned by the county without cost to the city and without cost to the railroads, whose tracks lie beneath that structure, yet notwithstanding the city seeks to impose the entire cost of the project west of that part built by the county upon the three railroads here involved, thus securing a complete project for truck and bus traffic without any cost whatever to the city.

13. The width of the new viaduct and the heaviness of its structure are far in excess of any needs for normal street traffic and its ramps, if necessary, are needlessly wide and the upper or main level of the viaduct is only for the convenience of through traffic and not to provide for local traffic needs.

14. The Kansas Public Service Company has by action of the city been required and permitted to route its transportation buses over the new viaduct without paying any of the construction cost or maintenance and the city has released the service company from the liability it had incurred for maintenance of the 1917 Central Avenue viaduct.

15. The purpose of the city in providing for the construction of the new viaduct was to supply a section of a bridge over the Kaw

bottoms and the Kaw river so as to provide a wide traffic artery through Kansas City, Kansas, across the river bottoms and the Kaw river to the central industrial district of Kansas City, Missouri, the Kansas City stockyards and in connection therewith to form connections with various state and United States highways and as part of the plan the city adopted a resolution requesting the state highway commission to designate certain streets and highways as state highways passing along and over said viaduct. After other detailed allegations such as above, it is further alleged that the real purpose of the new viaduct is not to carry over the tracks of the three railroads normal traffic belonging to Central Avenue but to divert over the new viaduct a large and new volume of interstate traffic coming from and going to all parts of Kansas, Colorado, Nebraska, Oklahoma and other places named in the petition and to divert traffic from more or less congested streets in Kansas City, Missouri, to relieve congestion of those points, all of which purposes are of no possible benefit to the railroads but on the contrary will cause serious damage to them.

16. Sets forth conditions in and about the Kansas City stockyards, to which thousands of cattle are consigned every day and from which cattle are taken every day and that in the past and to a large extent still constitute traffic over the lines of the said three railroads; that it is proposed by the new viaduct to provide a new artery for the entrance and exit of trucks carrying cattle from points within and without the state of Kansas, all outside the limits of defendant city, and that said truck lines are in direct competition with the railroads and the purpose is to deprive them of as much of the traffic as possible and that the effect of the new viaduct is not to benefit but to seriously damage the railroads and deprive them of a large volume of traffic.

17. Contains similar allegations as last above set forth but pertaining to manufacturing plants, wholesale houses and other industrial enterprises having a large volume of traffic.

18. That only three trains each way per day pass over the track of the Terminal Company, four trains each way per day over the tracks of the Union Pacific and only a few trains each way per day over the tracks of the Missouri Pacific, while thousands of trucks, buses and automobiles pass over the new viaduct and that the viaduct is intended for the convenience of the latter and not for the needs or convenience of the railroads.

19. That any necessity for the new viaduct, if there was any necessity, was not caused by the railroads or any of them but by the terrain and there are extensive allegations with respect thereto.

20. That a subsidiary purpose is to divert Kansas traffic from an interstate route running from Kansas to Missouri and back into Kansas so that trucks carrying livestock and other freight from the inland of Kansas to the stockyards on the Kansas side may go over the Central Avenue route without going into Missouri, with the result that interstate license fees may be avoided by such carriers and the latter who are competitors of the railroads thus get that additional advantage, and that the city is seeking to divert and interfere with interstate commerce, at an unreasonable, unnecessary and excessive cost to the railroads and each of them.

21. After alleging the new viaduct extends westerly across Fifth Street and intervening private property, plaintiff further alleges that the ordinances undertake and purport to impose upon this plaintiff and the other companies not only the cost of constructing the viaduct across and upon rights of way and property but across city streets and private property over which the railroads have no control and no interest, and that ordinance No. 35,587 and ordinance No. 37,183, even if authorized by G. S. 1949, 12-1634, which plaintiff denies, are an unreasonable exercise of the powers granted to the city by the statute and are unreasonable, arbitrary, capricious and void.

22. That for the reasons and in the respects heretofore set forth the ordinances and each of them and the assessments against the plaintiff and its property were and are arbitrary, capricious, unnecessary and unreasonable acts of the governing body of the city and the enforcement of either of said ordinances and the assessment would deprive plaintiff of property without due process of law in contravention of the Fourteenth Amendment to the Constitution of the United States.

23. The allegations of this paragraph are not under attack in any way and in effect laid groundwork for challenging the constitutionality of G. S. 1949, 12-1634.

24. That the last mentioned statute as applied to the facts and situation herein is arbitrary, unreasonable and capricious and deprives plaintiff of its property without due process of law under the Fourteenth Amendment, constitutes an interference with and undue burden on interstate commerce in violation of section 8 of article I,

and impairs the obligation of this plaintiff's contract with the defendant city dated November 27, 1917, in violation of section 10, of article I of the Constitution, all references being to the Constitution of the United States, and in violation of certain stated sections of the interstate commerce act.

25. That the lien claimed and asserted by the city upon the property of the plaintiff company, by reason of the above ordinances and statute, in the sum of $61,286.32, as a special assessment levied as the plaintiff's portion of the cost of construction of the viaduct, is illegal and invalid.

26. Plaintiff has no adequate remedy at law.

The prayer of the petition is to enjoin the city from enforcing or taking any steps to enforce ordinances Nos. 35,587 and 37,183, or the assessment made against this plaintiff and its property, and for other equitable relief.

Copies of the two ordinances and of certain notices given are attached to the petition as parts thereof. It is not necessary that we set forth any analysis of these ordinances further than to remark that ordinance No. 35,587 passed October 21, 1948, declared it necessary to build the viaduct under certain plans and specifications therein referred to, giving the railroad companies sixty days to begin construction and if they should fail that the city might proceed therewith. Ordinance No. 37,183 sets forth certain procedural steps followed, that a contract of the construction of the viaduct was made, that the total cost was $827,075.91, of which the Missouri Pacific Railroad Company was charged with 76.81 percent, the Kansas City Terminal Railway Company with 15.78 percent and the Union Pacific Railroad Company with 7.41 percent, and that there was assessed against the property of the Union Pacific Railroad Company the sum of $61,286.32, and other stated amounts against the property of the other companies.

The city filed its motion which recited generally that many of the allegations of the petition were not germane and would be incompetent, irrelevant or immaterial as evidence upon trial and it moved that all or parts of fifteen paragraphs be stricken for reasons later noted. The trial court denied this motion in part but did sustain it in the following particulars: (1) That part of paragraph 3 that the city had the right and power to tear down the viaduct and build a new one itself, as being immaterial, redundant and irrelevant. (2) All of paragraph 4 for the reason ordinance No. 34,771 and the

action with respect thereto does not decide issues presently involved. (3) All of paragraph 11 as being conclusions of fact not based on other facts in the petition and not facts upon which relief could be granted and immaterial. (4) All of paragraph 12 as immaterial, irrelevant and redundant. (5) All of paragraph 13 for the reason the size and strength of the viaduct is a matter to be determined by the city, and the allegations are irrelevant and redundant. (6) All of paragraph 14 as irrelevant and redundant, and (7) all of paragraph 19 as constituting conclusions of fact and self-serving declarations, immaterial, irrelevant and redundant and, if true, no basis for relief.

Similar rulings were made with respect to the petition of the Kansas City Terminal Railway Company.

In due time both companies appealed to this court, specifying the rulings noted above as error. Each has filed its own brief and the appellee city has filed separate answers thereto, but the questions presented and discussed are common to both appeals. We shall refer to the parties hereafter as appellants and appellee.

Although it filed no motion that the appeals be dismissed, in its briefs appellee challenges the right of appellants to be heard, contending that unless the order to strike affects substantial rights of appellants an appeal does not lie, and it directs our attention to the first paragraph of the syllabus in *Nelson v. Schippel,* 143 Kan. 546, 56 P. 2d 469, and other decisions following it, that motions to strike rest in the sound discretion of the trial court and an appeal does not ordinarily lie and unless it appears the ruling prejudiced the substantial rights of a party and in effect determines the action the ruling is not appealable. In *Sheahan v. Kansas Power & Light Co.,* 172 Kan. 399, 401, 241 P. 2d 515, the trial court had denied a motion to strike, and the defendant appealed. Appellee filed a motion to dismiss on the ground no appeal lay. In the opinion in that case the court quoted the above syllabus in *Nelson v. Schippel,* supra, and stated that if it appears the language stricken would prejudice the defendant in making its defense, then the order is appealable. It is apparent that the rule contended for by the appellee cannot be arbitrarily applied but that only after an examination of the pleading attacked and the motion to strike, may it be said that the striking was prejudicial. In this connection we take note of the right of a party to have redundant or irrelevant matter stricken from a pleading filed against him (G. S. 1949, 60-

741) and of our rule that failure of a party of exercise the right constitutes a waiver of his right to object to such allegations after joining issues thereon (*Moffet v. Kansas City Fire & Marine Ins. Co.*, 173 Kan. 52, Syl. 5, 244 P. 2d 228). By filing its motion, appellee has protected itself if its motion is meritorious, and if not, it is still in position to plead.

Before discussing the arguments set forth in the briefs attacking and defending the rulings of the trial court, we think it well to point out that for the greater part, the petitions under attack were framed on the theory the city had exercised its granted powers arbitrarily, capriciously and unreasonably and in such manner that plaintiffs would be deprived of their property without due process of law, and whether the plaintiffs will ultimately prevail or not will depend upon their ability to prove that the city so acted.

The gist of appellants' argument is that while the state may pass a valid act authorizing the city to exercise its police power and compel the construction of a viaduct, the statute may be invalid by change of conditions to which it applies, or the exercise of power under it may be arbitrary, capricious and unreasonable, but that in determining these questions the court must take into consideration the entire situation and all of the circumstances surrounding the exercise of the granted power. In support of its argument that the effect of the trial court's orders in striking parts of their petitions was to deprive them of an opportunity to prove the entire situation and all the circumstances, the appellants rely almost wholly on the two cases next mentioned.

In *City of Emporia v. Railway Co.*, 94 Kan. 718, 147 Pac. 1095, decided in 1915, the action was in mandamus to compel the defendant to construct an undergrade street crossing. The writ was denied, this court holding the ordinance ordering construction of the underpass to be arbitrary and unreasonable. An exhaustive review of that decision will not be made here, nor will variances between the facts of that case and the case at bar be pointed out. It is noted however that it is stated explicitly that in cases of the character there before the court it is not enough that there be a scintilla of reason for the enactment of the ordinance assailed, but that the question is whether, considering the entire situation and all the circumstances, the action of the city so far fails to measure up to the fair and just and reasonable as to make it clear that such action is arbitrary, capricious, unreasonable and oppressive. The

statements summarized are developed in the opinion, to which reference is made. The test laid down in the cited case was approved in *Smith v. Hosford*, 106 Kan. 363, 365, 187 Pac. 685, and *Mader v. City of Topeka*, 106 Kan. 867, 869, 189 Pac. 969.

In *Nashville, C. & St. L. Ry. v. Walters*, 294 U. S. 405, 79 L. Ed. 949, 55 S. Ct. 486, decided in 1935, the Supreme Court of the United States had before it the constitutionality of an order of the state highway commission of Tennessee assessing to the railway company one-half of the cost of an underpass where a state highway crossed its railroad line. In an action in the trial court in Tennessee there was evidence as to change in motor vehicle transportation, the character of the place where the underpass was built, the extent of railroad operations, the character of highway facilities and their use at the point, the location of a new highway, the occasion for its construction and the use contemplated of it, depletion of railroad earnings and other matters. The trial court, after hearing all of the evidence, enjoined the order. On appeal the state supreme court reversed and allowed an appeal. In considering whether the state statute which provided the railroad company must pay fifty percent of the construction cost violated the railway company's constitutional rights, the United States Supreme Court stated that a statute valid when enacted may become invalid by change in conditions to which it is applied, and that the police power is subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably (l. c. 415). After referring to the type of evidence adduced in the trial court (l. c. 431), it was further stated the state supreme court did not consider whether, in view of the facts relied upon, it was arbitrary and unreasonable to impose upon the railway one-half the cost, and, in effect, that it should have done so, and the judgment of the Supreme Court of Tennessee was reversed and the cause remanded for further proceedings.

In its brief the city attempts to distinguish the above cases on the facts. That they may be distinguished on that basis is conceded, but the principle laid down that the court must take into consideration the entire situation and all the circumstances surrounding the exercise of the granted power stands out, and appellee cites no authority to the contrary.

Briefly stated, appellee contends the question of the necessity of a viaduct, the character and cost, and what proportion of the cost should be borne by the railroad are for the city to determine rather

than the court, citing, *inter alia, City of Argentine v. A. T. & S. F. Rld. Co.,* 55 Kan. 730, 41 Pac. 946, 30 L. R. A. 255, and *State Highway Comm. v. Panhandle Eastern P. L. Co.,* 139 Kan. 185, 29 P. 2d 1104. We here note that the first cited case involved no question of unreasonable or arbitrary exercise of power. The last cited case was an action in mandamus in this court to compel the defendant at its own expense to move certain pipe lines in the highway, under Laws 1929, chapter 225, section 16, a statute analogous to that involved in the case at bar. No question as to sufficiency of pleadings or proof was involved. We granted the writ, but on appeal in *Panhandle Co. v. Highway Comm'n.,* 294 U. S. 613, 79 L. Ed. 1090, 55 S. Ct. 563, the Supreme Court of the United States reversed, holding that the statute relied upon by the commission and this court authorized an arbitrary and unreasonable order enforcement of which would deprive the company of its constitutional rights. Appellee further says that the viaduct is a part of the street and as such within the scope of the city's duties and liabilities (citing *City of Eudora v. Miller,* 30 Kan. 494, 2 Pac. 685 and other cases in accord); that the city, not the companies, is the judge of how the street shall be maintained (*Root v. City of Topeka,* 104 Kan. 668, 180 Pac. 229); that allegations as to the action reported in *City of Kansas City v. Union Pac. Rld. Co., et al.,* 165 Kan. 575, 196 P. 2d 184, referred to in paragraph 4 of the petition are immaterial; that their inclusion by reference was redundant and should have been stricken, and in support quotation is made from a dissenting opinion in *Jackson v. National Bank of Topeka,* 146 Kan. 424, 448, 71 P. 2d 1057. Although set forth in considerable detail, other argument is that by their allegations the appellants seek to substitute their judgment for that of the city as to what improvement should have been made.

We shall not take up and discuss appellee's contentions as last stated, for there is no question here but that the general rule is that the city was the judge of whether a new viaduct was necessary; that appellants may not substitute their judgment for that of the city; that a viaduct when built is a part of the street; and similar matters. The question is whether the acts of the city in exercising its power acted in an arbitrary, capricious, unreasonable and oppressive manner and whether the allegations stricken were proper to be considered in determining that question under the rules of law heretofore discussed.

As is evident, we have no occasion to consider whether any of the allegations, either singly or taken together, are of such persuasiveness as to require a holding that plaintiffs are entitled to judgment. The issues are not framed and there has been no trial, and we express no opinion in advance of a trial. We do not find it necessary to take up and discuss each allegation under attack. We are of the opinion that the allegation in the third paragraph that the city had the right and power to tear down an existing viaduct and build a new one was a conclusion of law rather than of fact, and that the allegations of the fourth paragraph pertaining to the mandamus action in this court may not be said to allege any part of the entire situation and the circumstances surrounding the exercise of the granted power to compel construction of a viaduct and that it may not be said the trial court erred in its order striking them. As to all other allegations attacked we are of opinion they allege facts showing the entire situation and the circumstances surrounding the exercise of the granted power, that they should not have been stricken, that the orders striking them were prejudicial to appellants, that the orders of the trial court striking them should be reversed, and that they should be ordered reinstated in the petitions, and it is so ordered.