No. 40,337

ETHELINE A. SMITH, *Appellee,* v. R. L. WRIGHT, *Appellant.*

(305 P. 2d 810)

Opinion filed January 12, 1957.

*Robert L. NeSmith* and *Justus H. Fugate,* both of Wichita, were on the briefs for the appellant.

*Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Russell Cranmer, Dale B. Stinson, Jr., Cliff W. Ratner, William L. Fry, A. Wayne Murphy, Bernard V. Borst* and *D. Clifford Allison,* all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is an action to recover damages for malpractice. Upon the overruling of his demurrer to plaintiff's second amended petition defendant perfected an appeal from that ruling, including in his notice of appeal, as the statute permits (G. S. 1955 Supp., 60-3314a; *Western Shale Products Co. v. City of Fort Scott,* 175 Kan. 643, 266 P. 2d 327; *Standard Steel Works v. Crutcher-Rolfs-*

*Cummings, Inc.*, 176 Kan. 121, 269 P. 2d 402; *Brewer v. Hearne Motor Freight Lines, Inc.*, 179 Kan. 732, 297 P. 2d 1108; *Bortzfield v. Sutton*, 180 Kan. 46, 299 P. 2d 584; *Foster v. Humburg*, 180 Kan. 64, 70, 299 P. 2d 46) rulings, made more than two months before, on five separate and distinct motions.

The original petition is lengthy and ordinarily its factual averments would be summarized. However the involved motions, as well as the rulings thereon, are replete with references to numbered paragraphs of such pleading. For that reason, and to make certain there can be no doubt or confusion respecting the appellate issues presented and determined, a copy of that instrument is attached to this opinion as an appendix so that all its allegations and paragraph numbers will be available for ready reference.

The first challenge made by defendant against the petition was in the form of a motion to separately state and number plaintiff's causes of action. This motion was based on the theory her claims respecting preoperative treatment; operative treatment and postoperative treatment consisted of three separate causes of action. This motion was overruled.

Later defendant filed a motion to strike the last sentence of paragraph 2 and the first sentence of paragraph 3 of the petition on the grounds those allegations were redundant, surplusage, formed no part of the purported cause of action, were prejudicial and showed on the face of the petition the acts complained of were barred by the statute of limitations. In the same motion defendant moved to strike all of the second sentence of paragraph 4 of the petition on the same basis, omitting reference to the statute of limitations. She also moved to strike the word "premature" appearing in the second line of paragraph 10 of such pleading on the ground such word was redundant, prejudicial and contrary to and in conflict with the allegations of paragraphs 5 and 9 of the petition. After it had been presented and argued the trial court overruled the portion of this motion relating to paragraphs 2 and 3 of the petition; sustained the portion relating to paragraph 4 of that pleading; and overruled the portion relating to paragraph 10 thereof.

Still later defendant filed a motion to make the petition more definite and certain by stating: 1. "In paragraph 7, what medical treatment, and what examinations defendant should have 'personally' given or made that plaintiff claims defendant did not give or make." 2. "In paragraph 10, how and in what manner defendant

interrupted and interfered with the natural course of plaintiff's pregnancy." 3. "In paragraph 9 in said petition the exact day in June, 1953, plaintiff placed herself under the care of another physician." 4. "The facts in subparagraphs (*a*), (*e*) and (*h*) of paragraph 12, wherein plaintiff claims defendant failed to use ordinary care and skill ordinarily exercised by physicians and surgeons practicing in this community." All of this motion, except the portion directed at subparagraph (*a*) of paragraph 12 of the petition, was sustained.

Resort to the petition and what has been heretofore related makes it apparent that none of the trial court rulings, adverse to defendant, mentioned up to this point have the effect of determining the action, hence would not be appealable orders under our decisions (See, e. g., *Estes v. Tobin Construction Co.,* 159 Kan. 322, 153 P. 2d 939; *Billups v. American Surety Co.,* 170 Kan. 666, 670, 228 P. 2d 731; *Moffet v. Kansas City Fire & Marine Ins. Co.,* 173 Kan. 52, 244 P. 2d 228; *Kansas City Terminal Railway Co. v. City of Kansas City,* 173 Kan. 473, 481, 249 P. 2d 671; *Meek v. Ames,* 175 Kan. 564, 266 P. 2d 270) were it not for the provisions of 60-3314a, *supra,* authorizing a review of all rulings of which a party complains when such statute is applicable. Even so the fact such motions are now entitled to consideration because of such statute does not mean that they are not to be disposed of under the established rule, which we pause to here note springs from statutory fiat (G. S. 1949, 60-760 and 60-3317), announced in ·*Nelson v. Schippel,* 143 Kan. 546, 56 P. 2d 469, which holds:

"Motions to strike, to make definite and certain, and to separately state and number, rest in the sound discretion of the trial court, and from rulings thereon an appeal does not ordinarily lie. *Unless it appears the ruling prejudiced or will prejudice the substantial rights of a party it will not be reversed.* Unless it appears the ruling affects a substantial right and in effect determines the action it is not appealable." (Syl ¶ 1.) (*Emphasis supplied.*)

Having carefully examined the petition and considered the force and effect to be given the rulings now in question we find nothing in the trial court's action with respect thereto which, in our opinion, can be considered as prejudicial to the substantial rights of the defendant on the trial of the cause. It follows such rulings are not reversible.

Subsequent to rulings on the foregoing motions plaintiff filed an amended petition. For all practical purposes it may be said the first six paragraphs were identical with the original petition, except

for deletion, in compliance with the ruling on the motion to strike, of the second sentence of paragraph 4 of that pleading.

Paragraph 7 of the petition was amended by insertion of the clause, "when he should have examined her at regular intervals to determine her post-operative condition, advised her concerning such condition and prescribed treatment designed to prevent the post-operative complications described in paragraph number eight below," between the words "operation" and "and did not again visit her" as they appear in the original pleading. In addition the word "statement," in the last sentence of paragraph 7 of the petition was changed and the word "treatment" was substituted.

Paragraph 9 of the petition was amended to comply with the trial court's order on the motion to make more definite.

Paragraph 10 of the petition was also changed. As amended the first five lines of that paragraph read: "On or about the 4th day of November, 1953, plaintiff gave birth to a premature baby boy and as the direct and proximate result of such unnecessary and negligent operation by defendant causing interruption and interference with the natural course of plaintiff's pregnancy." Remaining portions thereof following the word "pregnancy," as it appears in paragraph 10 of the petition, are the same.

Subparagraph (e) of paragraph 12 of the petition was amended by substituting a comma for the period, appearing after the word "abdomen", and then adding the words "in that he failed and neglected to use steel wire, thread or other material of sufficient strength to properly bind and repair said wound."

Subparagraph (h) of the same paragraph of the petition was amended by omitting the period after the word "operation" and adding the words "as fully set forth in paragraph number seven above."

Defendant attacked plaintiff's amended petition by a motion to dismiss that pleading and by motion to make it more definite and certain.

The motion to dismiss is based on grounds plaintiff failed to amend her petition in compliance with the trial court's ruling on the initial motion to make more definite and certain. Apparently the trial court either believed plaintiff had complied with its orders or that she had made a conscientious effort to do so for it overruled such motion and at the same time gave her an opportunity to amend her amended petition by sustaining portions of defendant's motion

to make that pleading more definite and certain. Notwithstanding defendant contends the trial court erred in denying such motion. Our province in reviewing this contention is limited to questions respecting whether the trial court abused sound judicial discretion in making the ruling or the record makes it clearly appear it was so wrong as to result in prejudice to defendant's substantial rights. (See *Fletcher v. Securities Acceptance Corp.*, 171 Kan. 215, 231 P. 2d 249.) Under the related conditions and circumstances we are unwilling to say the record warrants either conclusion, hence such ruling cannot be disturbed.

The motion to make the amended petition more definite and certain asked that plaintiff be required to amend that pleading by (1) stating in paragraph 7 what medical treatment defendant should have personally given plaintiff, which plaintiff claims defendant did not give her; (2) alleging the facts upon which she bases her charge in subparagraph (*h*) of paragraph 12, that defendant failed to use ordinary care and skill ordinarily exercised by physicians and surgeons practicing in the community; and (3) averring in paragraph 9, at what stage on June 1, 1953, her pregnancy had advanced. The first and third grounds of this motion were sustained. The second was overruled.

In conformance with the foregoing ruling plaintiff amended her pleadings in such manner that paragraph 7 of her second amended petition now reads:

"Defendant gave plaintiff no medical treatment or examination following said operation, when he should have examined her at regular intervals to determine the progress of healing in said incision, should have determined the extent to which said incision had healed before dismissing plaintiff from the hospital, should have discovered prior to dismissing plaintiff from the hospital that said incision was not healing because of infection and improper closing thereof and should have applied healing agents to arrest said infection and resutured said incision prior to dismissing plaintiff from the hospital so as to prevent the post operative complications described in paragraph number eight below. Defendant . . ."

and in addition contains averments substantially the same as those appearing in the last eight lines of paragraph 7 of the appendix. Plaintiff also changed paragraph 9 of the amended petition by adding the following sentence:

"Plaintiff is unable to state the exact progress of her pregnancy on June 1, 1953, but states that, to the best of her present knowledge and belief, she was at such time between two and three months pregnant."

Defendant makes no claim these last amendments do not comply with the trial court's ruling on the motion presently involved. However, she does contend that tribunal erred in overruling the second ground of such motion. Noting the allegations of paragraph 7 above quoted and mindful that subparagraph $(h)$ of paragraph 12 of the amended petition, as well as the second amended petition, aver that the lack of care and skill relied on in such subparagraph, are the matters and things "fully set forth in paragraph number seven above," we have no difficulty in concluding this contention lacks merit and cannot be upheld.

Having disposed of all intermediate rulings of which complaint is made we can now turn to the principal issue involved on this appeal. Did the trial court err in overruling the demurrer which was based solely on the ground the second amended petition failed to state facts sufficient to constitute a cause of action against the defendant?

We are not disposed to re-emphasize the allegations of the involved pleadings, all of which must be considered in view of the established rule that a demurrer searches the record. In fact that is our reason for detailing such allegations at length. Nor are we inclined to labor contentions advanced by the defendant with respect thereto. It suffices to say that in our opinion a careful review of the petition, the amended petition and the second amended petition, regardless whether such pleadings are liberally or strictly construed is all that is required to fully demonstrate each of such pleadings states a cause of action for malpractice and that the matters defendant argues and seeks to have adjudicated in connection with the demurrer can and must be raised by him as defenses by way of answer.

In reaching the conclusions just announced we have not attempted, nor do we deem it necessary, to write a thesis on the subject of the rights, duties and liabilities of the parties in a malpractice action. Whether the plaintiff can prove the allegations of her petition, defendant can assert and establish defenses with respect thereto, or what the legal rights and liabilities of the parties on joinder of issues may be under the evidence adduced on a trial of such issues, are matters with which we are not presently concerned. All that is required for purposes of the point now under consideration is to ascertain and hold—as we do now—that under the facts, conditions and circumstances set forth in the petition and the

amended petitions, as referred to at length in the opinion, the trial court did not err in overruling the involved demurrer.

Since the record discloses nothing to warrant a reversal of any of the orders or rulings herein mentioned and discussed the judgment of the trial court with respect to all such rulings must be affirmed and it is so ordered.

HALL, J., not participating.

---

## APPENDIX

### PETITION

Comes now plaintiff and for her cause of action against defendant alleges and states:

1. Plaintiff is a resident of Wichita, Sedgwick County, Kansas.

2. Defendant, R. L. Wright, is a resident of Wichita, Sedgwick County, Kansas, and is a practicing osteopathic physician with principal place of business at 3244 East Central Street. Defendant was not at any time material hereto authorized under the laws of the State of Kansas to practice medicine and surgery.

3. On or about the 26th day of March, 1953 the plaintiff employed said defendant in the professional capacity of a physician and surgeon upon representation by said defendant that he was in fact authorized to act as a physician and surgeon in the State of Kansas. On or about said date defendant examined plaintiff and informed her that she was afflicted with fibroids of the uterus and that such condition was so serious as to require immediate surgery to correct the same and that her uterus would have to be removed from her body. This examination consisted of manual and visual inspection of the vagina and abdomen. No X-ray, chemical or other recognized test of any kind was performed by defendant to determine whether or not plaintiff was pregnant.

4. On or about March 31, 1953, plaintiff, at defendant's insistence, entered the Osteopathic Hospital of Wichita, located at 3557 East Douglas Street, Wichita, Kansas, preparatory to undergoing such surgery. During such day plaintiff was X-rayed but such X-ray pictures were not taken for the purpose of determining plaintiff's possible pregnancy and were not studied by defendant for such purpose. On the evening of the same date defendant again examined plaintiff's abdomen and vagina by manual and visual

methods only and did not make or offer to make any X-ray, chemical or other recognized test for pregnancy. At such time defendant again advised plaintiff that she needed immediate surgery to correct the condition of fibroids of the uterus and that her uterus must during such surgery be removed from her body.

5. On or about April 1, 1953, plaintiff was placed under a general anesthetic by and at the direction of defendant and defendant cut and laid open plaintiff's abdomen by midline incision extending from the umbilicus to symphysis pubis. Defendant then manually and visually examined plaintiff's uterus, replaced her uterus in the abdominal cavity without closing the incision and left the operating room to inquire of plaintiff's husband whether or not plaintiff was pregnant. Upon being informed plaintiff's husband did not think so, defendant returned to the operating room, again manually and visually examined plaintiff's uterus, replaced it in the abdominal cavity and again left the operating room to confer with plaintiff's husband, stating that plaintiff was three months pregnant and that he could do nothing except close the incision. Defendant then returned to the operating room and closed the incision in plaintiff's abdomen, in such a manner as to prevent proper healing of such incision and without the use of proper insertion of steel wire, thread or other material of sufficient strength to properly bind and repair said wound.

6. During the evening hours of the same day said operation was performed and while plaintiff was still in a state of shock from said operation, defendant ordered that plaintiff be required and made to stand erect and walk without making any examination to determine whether she was physically able to do so. As a result of said order being carried out by hospital employees, plaintiff suffered extreme pain and anguish and lost consciousness.

7. Defendant personally gave plaintiff no medical treatment or examination following the said operation and did not again visit her except that he entered her hospital room on or about the 2nd day of April, 1953, and informed plaintiff that plaintiff's sister would be thereafter barred from the hospital because said sister had been heard to complain of defendant's treatment of plaintiff. Such statement along with defendant's unpleasant manner, upset plaintiff and caused her great worry and mental suffering.

8. On or about the 4th day of April, 1953, plaintiff was removed from said hospital to her home. On or about the 9th day of April,

1953, defendant, without personally examining plaintiff to determine whether said incision had or had not healed properly, directed that all stitches closing said incision be removed. Said incision had not in fact healed due to defendant's failure to properly secure same following said operation and plaintiff's abdomen broke open, had to be re-sutured, became infected, drained continually and failed to heal for approximately thirty days, causing plaintiff extreme pain, discomfort, anguish and suffering. As a further result thereof, plaintiff's abdomen today bears a scar approximately one inch wide extending from the umbilicus to the symphysis pubis which is tender and causes her pain and humiliation.

9. Subsequent thereto and during June, 1953, plaintiff placed herself under the care of another physician who, upon examination by X-ray and other recognized tests, advised her that she was pregnant and that the fetus was of approximately four or five months intrauterine life.

10. On or about the 4th day of November, 1953, plaintiff gave birth to a premature baby boy and as the direct and proximate result of defendant's negligent interruption and interference with the natural course of plaintiff's pregnancy, said baby weighed four pounds four ounces and required incubation and hospitalization for twenty-nine days following its birth, and continuing medical care and treatment for approximately one year thereafter. Plaintiff was thereby caused great worry, anguish and mental pain on account of the precarious health of her baby.

11. From the date of said operation, April 1, 1953, to the birth of her child on November 4, 1953, plaintiff suffered from constant fear and apprehension that said unwarranted operation by defendant upon her womb while she was pregnant would cause her child to be born dead, malformed, disfigured, stunted in size, or that she would lose said child by miscarriage. As a result of said constant fear and apprehension, plaintiff was forced to suffer extreme mental pain, worry and anguish.

12. Defendant was negligent in performing said operation upon plaintiff and in his treatment of her in the following particulars:

(a) That defendant failed to use that degree of ordinary care and skill used by ordinary physicians and surgeons practicing in this community in the diagnosis of plaintiff's condition.

(b) That defendant failed and neglected to make any recognized tests to determine whether or not plaintiff was pregnant,

when he knew, or by the exercise of that degree of care and skill ordinarily used by duly licensed and practicing physicians and surgeons in this community, should have known, that same should be made.

(c) That defendant advised plaintiff that an immediate operation was necessary and advisable when he knew, or by the exercise of ordinary care should have known, that same was not immediately necessary or advisable.

(d) That defendant cut into plaintiff's abdomen when he knew or, by the exercise of ordinary care and skill used by physicians and surgeons practicing in this community, would have known that same was unnecessary.

(e) That defendant failed to use that degree of ordinary care and skill used by physicians and surgeons practicing in this community in closing and repairing the incision in plaintiff's abdomen.

(f) That defendant ordered that plaintiff be made to stand erect and walk following said operation when, by exercising the ordinary care and skill of physicians and surgeons practicing in this community, he knew or should have known that she was unable to do so.

(g) That defendant ordered the stitches securing the incision in plaintiff's abdomen removed when, by exercising the ordinary care and skill of physicians and surgeons practicing in this community, he knew or should have known that said incision had not healed and would break open.

(h) That defendant failed and neglected to exercise that degree of care and skill ordinarily exercised by physicians and surgeons practicing in this community to protect plaintiff's peace of mind and mental well being during her convalescence following said operation.

13. On the date of said operation plaintiff was an ablebodied woman, 30 years of age, with a life expectancy of 45.95 years. By reason of said operation plaintiff has been compelled to undergo extreme and excruciating mental and physical pain and suffering and anguish and disfigurement, and will ever be forced so to do in the future. By reason of all the foregoing plaintiff has been damaged in the sum of $19,761.80, no part of which has been paid.

WHEREFORE, plaintiff prays judgment against the defendant in the sum of $19,761.80, and the costs of this action.