No. 41,066

ANNA E. BROBERG, *Appellee*, v. OMA A. BOLING and SCOTT STUCKEY, a Sole Proprietor Doing Business under the Firm Name and Style of "Scott Stuckey Realty Company," *Appellants*.

(331 P. 2d 570)

Opinion filed November 8, 1958.

*Verne M. Laing*, of Wichita, argued the cause, and *Lester L. Morris, Ferd E. Evans, Jr., Ralph R. Brock*, and *J. Edward Taylor, Jr.*, all of Wichita, were with him on the briefs for the appellants.

*Gerald Sawatzky*, of Wichita, argued the cause and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris*, and *Anthony T. Dealy*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal from orders overruling a motion to require the plaintiff to separately state and number her causes of action, a motion to strike or directing the plaintiff to make her petition definite and certain, and a demurrer to the petition.

The petition identifies the parties, outlines the factual situation on which plaintiff bases her right to relief, and contains everything necessary and essential to a proper disposition of the appellate issues involved. Therefore, omitting formal averments and the prayer, we are impelled to quote and summarize from such pleading at length.

"3. That at all times herein material defendant Oma A. Boling was acting not only for herself, but also as the agent, servant, employee and representative of defendant Scott Stuckey, a sole proprietor doing business as Scott Stuckey Realty Company.

"4. That on and prior to September 17, 1955, plaintiff was the owner in fee simple of the following two tracts of improved realty in Wichita, Kansas, to-wit:

"(a) Commercial property commonly known and referred to as 1940 North Broadway, Wichita, . . .; and,

"(b) Apartment building located at 1130 North Broadway, Wichita, . . .

"5. That on or about September 17, 1955, defendant Oma A. Boling, acting on her own behalf and as the agent, servant, employee, and representative of defendant Scott Stuckey, came to plaintiff and persuaded her to enter into a contract to sell both of the above described tracts of realty to Benny H. Rush and Helen Doyle Rush, husband and wife, whom defendant Oma A. Boling then represented to plaintiff had been thoroughly investigated by her, defendant Boling, and were by her known to be reputable persons and competent contractors and builders, said defendant Boling further assuring plaintiff that if she entered into said contract and executed deeds to said Rushes, the deeds would be escrowed with defendant Scott Stuckey at his said business office, where they would be retained for plaintiff's complete protection until they were paid for by said Rushes. That a true and correct copy of said contract is hereto attached, . . . which contract plaintiff executed in reliance upon defendant Boling's aforesaid representations. That thereafter, in reliance upon said contract and defendant Boling's aforesaid representations, plaintiff executed two warranty deeds conveying the above described tracts of realty to Benny H. Rush and Helen Doyle Rush, said deeds being dated and acknowledged September 28, 1955. That said deeds were executed and acknowledged by plaintiff at the busines offices aforesaid of defendant Scott Stuckey, and were by plaintiff left at Scott Stuckey's said place of business in reliance upon the aforesaid representations and contractual recitals that the same would be there retained in escrow until the purchase price therefor was paid in full (or until a trade might be effected for other property the deeds to which would be substituted and placed in escrow with defendant Scott Stuckey in lieu of the deeds in plaintiff's property).

"6. That thereafter, on or about September 25, 1955, [the petition originally stated September 26, 1956, but on oral motion of plaintiff the court ordered on December 16, 1957, that this date be amended by interlineation to read September 26, 1955, rather than the year 1956], defendant Oma A. Boling, acting on her own behalf and as the agent, servant, employee, and representative of defendant Scott Stuckey, persuaded this plaintiff to come to the office of defendant Scott Stuckey and there to execute a supplemental contract with the said Benny H. Rush and Helen Doyle Rush, whereby said Rushes were permitted to trade plaintiff's property at 1130 North Broadway for property commonly known and in said contract designated as 'the Fortney land situated at Andover, Kansas', and to trade plaintiff's property at 1940 North Broadway for other property 'as mutually agreed upon' by Rushes and this plaintiff, with the deed to the Fortney land to be held in escrow by defendant Scott Stuckey in lieu of plaintiff's said deed to 1130 North Broadway, and with plaintiff's said deed to 1940 North Broadway to be retained by defendant Scott Stuckey in escrow until and as 'mutually agreed upon' by this plaintiff

and said Rushes. That a true and correct copy of said supplemental contract of September 26, 1955, is hereto attached, . . .

"7. That in utter disregard of said contracts and the representations made to plaintiff as aforesaid, defendants herein wrongfully permitted Benny H. Rush and Helen Doyle Rush to remove both of said deeds from escrow, and to record the same, the deed to 1130 North Broadway being recorded on October 3, 1955, . . . and the deed to 1940 North Broadway being recorded on October 5, 1955, . . . in the office of the Register of Deeds of Sedgwick County, Kansas. That the foregoing connection, said 1130 North Broadway property was not traded for the aforesaid Fortney land, or for any other land or security, and neither of said deeds was removed from escrow and recorded with the knowledge, consent or approval of this plaintiff."

The real estate purchase contract attached as Exhibit "A" is on a printed form, is dated September 17, 1955, names Anna Broberg as seller and Benny H. Rush and Helen Rush, his wife, as buyer, and the salient provisions are as follows:

"1. The Seller does hereby agree to sell and convey to the Buyer by a good and sufficient warranty deed the following described real property situated in Sedgwick County, State of Kansas, to-wit:

"Property at 1940 N. Broadway at $15,000.00 and Property at 1130 N. Broadway at $25,000.00. Legal description of properties better described in abstract.

"2. The Buyer hereby agrees to purchase, and to pay to the Seller, as consideration for the conveyance to him of the above described real property the sum of $40,000.00 in manner following, to-wit:

"This $40,000.00 is to be applied as down payment on a commercial building or buildings, to be approved by Anna Broberg in the kind of building and place of building site to be determined by Anna Broberg, to be built at turn-key, by Benny H. Rush at $7.50 per sq. ft. (See back of Contract.)

"If Anna Broberg decides not to build a commercial center before 2 years from above date, then Money in the amount of $40,000.00 shall be paid to Anna Broberg by Benny H. Rush not later than 2 years from above date. Said amount bearing interest at the rate of 6% per annum. If Benny H. Rush borrows money on the above mentioned property for *South Hydraulic sites,* deeds for each site shall be held in escrow by Rush and Anna Broberg until paid in full. In which case she shall receive $100.00 as profit on each site covered by said loan, trade or sale, with a minimum of 30 building sites. This money with above return on investment to be used again at Miss Anna Broberg's option.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"4. *A duly executed copy of the Purchase Agreement, together with all other documents in connection with the sale of the above described real estate, shall be deposited with Scott Stuckey Realty, 3212 E. Kellogg, to be delivered to the Buyer upon the Buyer's fulfillment of his obligations thereunder."* (Emphasis supplied.)

Exhibit "B" attached to the petition is a typewritten agreement dated September 26, 1955, between the plaintiff Anna Broberg as party of the first part and Benny H. Rush and Helen Rush as party of the second part, and it provides as follows:

"1. Party of the first part will permit party of the second part to trade 1130 North Broadway on the Fortney Land situated at Andover, Kansas.

"2. Party of the second part will give to the party of the first part a deed on 1940 North Broadway to be held in escrow until such time as party of the second part needs to borrow or trade as mutually agreed upon and if the property of 1940 North Broadway is traded for other property then the other property acquired will be held in by the party of the first part as security until the aforementioned consideration has been paid in full.

. . . . . . . . . . . .

"4. If after a reasonable time party of the second part is not able to make satisfactory deal with the property at 1940 North Broadway then it is to be deeded back at $15,000.00 the same amount as party of the second part has agreed to pay for it. Party of the first part will pay real estate commission at 5% to Scott Stuckey Realty as and when party of the second part sells or trades 1940 North Broadway on other property.

"5. Party of the second part will give to party of the first part a deed on the Fortney Land as security to be held in escrow."

A notation appearing on the foregoing Exhibit reads:

"The recorded mortgage is to be deducted from the $15,000.00 as shown in item No. 4."

Then the petition (Par. 8) alleges in substance that without her knowledge, consent or approval said Benny H. Rush and Helen Doyle Rush on November 25, 1955, executed a $10,000 mortgage on the property at 1130 North Broadway, to secure a personal indebtedness of the Rushes, which mortgage was promptly recorded; that no payment of principal or interest has ever been made with respect to said mortgage indebtedness, and that the mortgagee threatens immediate foreclosure of said mortgage; and that on July 9, 1956, upon the demand of this plaintiff Benny H. Rush and Helen Doyle Rush reconveyed to this plaintiff said 1130 North Broadway property, subject, however, to said outstanding mortgage, which deed was by this plaintiff recorded on July 25, 1956, but that said property remains subject to said $10,000 mortgage indebtedness and accrued interest thereon.

The petition (Par. 9) further alleges that on or about January 24, 1956, the Rushes executed a mortgage covering the property at 1940 North Broadway, to secure a personal indebtedness of $4,500, out of which a mortgage theretofore placed on said property

by plaintiff in the amount of $2,200 was discharged; that on or about May 29, 1956, the Rushes deeded said property, subject to said mortgage, to Ken Stowell, which deed was recorded June 4, 1956; and that plaintiff has contemporaneously herewith instituted a separate .action against said Ken Stowell and others to recover title to and possession of said 1940 North Broadway property, subject, however, to said outstanding mortgage, and that even if plaintiff prevails in said action she will nevertheless sustain minimum damages equal to the difference between $2,200 and the then unpaid principal balance of said outstanding mortgage.

Further allegations of the petition read:

"10. That at the time of the original contracts aforesaid, defendant Scott Stuckey demanded a commission of $2,000.00 for having effected for plaintiff, through the efforts of his agent, servant, .employee, and representative Oma A. Boling, defendant herein the sale of plaintiff's two aforesaid tracts of realty. That on September 29, 1955, plaintiff paid to defendant Scott Stuckey the sum of $500.00 upon said commission, and on September 30, 1955, plaintiff executed to defendant Scott Stuckey her promissory note due 30 days after date in amount of $750.00 representing the balance of commission due with respect to the sale of plaintiff's said 1130 North Broadway property. That defendant Stuckey on December 16, 1955, made written demand upon plaintiff for the payment of said note, and that under date of February 15, 1956, defendant Stuckey made written demand upon plaintiff for the payment of said note, and, also, for the payment of an additional $750.00 with respect to commission for the sale of plaintiff's said 1940 North Broadway property, to-wit, an aggregate claimed commission of $1,500.00 (in addition to the $500.00 theretofore paid to defendant Stuckey by plaintiff as aforesaid).

"11. That at the time defendant Oma A. Boling first persuaded this plaintiff to enter into said original September 17, 1955, contract with Benny H. Rush and Helen Doyle Rush, she and defendant Scott Stuckey knew that said defendants were not reputable people or competent contractors, and any investigation conducted by her would readily have disclosed such facts. That defendant Oma A. Boling's said representations to this plaintiff were false and fraudulent, both because defendant Oma A. Boling knew the same were untrue, and also because she could in no event have known such false statements to be true and therefore could not have made such positive representations with any knowledge or belief of their verity. That, moreover, defendants Oma A. Boling and Scott Stuckey wrongfully, and in violation of their said representations and in contravention of the aforesaid written contracts, permitted Benny H. Rush and Helen Doyle Rush to remove plaintiff's two said deeds from escrow, and accordingly permitted and made it possible for said Benny H. Rush and Helen Doyle Rush to mortgage said property, to deed said 1940 North Broadway property to Mission Developments, Inc., and to thus defraud and damage this plaintiff. That defendants Oma A. Boling and Scott Stuckey conspired together, as well as with Benny H. Rush and Helen Doyle Rush, to

defraud plaintiff and to deprive her of her two aforesaid pieces of real property, and that at no time herein did said defendants or either of them intend to comply with said contracts or to live up to their said promises and representations. That all of the actions of said defendants, and of said Benny H. Rush and Helen Doyle Rush were enabled to secure and record plaintiff's two said deeds and to mortgage plaintiff's said properties and to convey plaintiff's said 1940 North Broadway property to Mission Developments, Inc., were done without the knowledge, consent, or approval of this plaintiff. That, in this connection, plaintiff returned to her home in Lincoln, Kansas, on or about October 25, 1955, relying fully upon defendants' aforesaid representations and upon said contracts, and upon the assumption that her two said deeds were safely retained by defendant Scott Stuckey in escrow, and that plaintiff did not discover that said deeds had by defendants wrongfully been released and delivered to said Rushes, and that the Rushes had wrongfully mortgaged the same, until April, 1956.

"12. That Benny H. Rush and Helen Doyle Rush have left the State of Kansas, are now residing elsewhere, and that their present address and whereabouts are unknown to this plaintiff. That plaintiff is unable to procure service of summons upon said Rushes in the State of Kansas, and for that reason has not made them parties defendant herein.

"13. That as a result of defendant's aforesaid fraudulent acts and false and fraudulent misrepresentations, plaintiff has sustained and is entitled to recover of and from defendants damages as follows:

(Here follow recitals of damages sustained with respect to properties at 1130 North Broadway and 1940 North Broadway; a claim for return of cash and note given to Scott Stuckey; and a claim for punitive damages for real estate commission)."

Following the filing of the foregoing petition defendants moved that plaintiff be required to separately state and number her alleged causes of action. This motion was overruled under an order wherein the trial court stated in substance that its action in that respect was based, in part at least, on the admission of plaintiff's counsel in open court that the action was based upon alleged fraudulent acts and misrepresentations and not contract.

Subsequently defendants moved the court for an order to strike or directing the plaintiff to make her petition definite and certain in particulars set forth in a twenty-eight paragraph motion. This motion was overruled in its entirety.

Thereupon defendants demurred to the petition on grounds that several causes of action were improperly joined and that such pleading did not state facts sufficient to constitute a cause of action. When this demurrer was overruled they perfected their appeal from each of the foregoing rulings, which will now be considered and disposed of in order as above noted.

Although they do not abandon it appellants spend little time on the point the overruling of their motion to separately state and number alleged causes of action constituted error. In our opinion a careful reading of the petition is all that is required to establish that appellee bases her right to relief on a single theory, *i. e.,* the alleged fraudulent acts and false and fraudulent representations of the appellants. Moreover, appellee's admission to that effect, at the time such motion was being argued in the court below, is binding upon her and she cannot go beyond it. Under the circumstances the appeal from the order overruling the motion lacks merit and cannot be upheld.

It will add nothing to the body of our law or serve any useful purpose to here detail the contents of appellants' long and tedious motion to strike or make the petition more definite and certain. Nor do we propose to further labor allegations of the petition. It suffices to say we have reviewed all grounds of such motion, along with the petition, in the light of the well-established rule, which we pause here to note springs from statutory fiat (G. S. 1949, 60-706 and 60-3317), that motions to strike and to make definite and certain rest so much in the sound discretion of the trial court that rulings with respect thereto will not be reversed unless it appears they have prejudiced or will prejudice the substantial rights of a party. For a few of our many decisions adhering to the foregoing rule see *Marshall v. Duncan,* 182 Kan. 540, 322 P. 2d 762; *Nausley v. Nausley,* 181 Kan. 543, 545, 313 P. 2d 302; *Wilson v. Kansas Turnpike Authority,* 181 Kan. 1025, 1028, 317 P. 2d 843; *Smith v. Wright,* 180 Kan. 584, 586, 305 P. 2d 810; *Nardyz v. Fulton Fire Ins. Co.,* 151 Kan. 907, 101 P. 2d 1045; *Nelson v. Schippel,* 143 Kan. 546, 56 P. 2d 469. Having reviewed the record as above indicated we are convinced the overruling of such motion did not constitute abuse of discretion or result in prejudice to appellants' substantial rights. It follows the trial court's action in that regard will not be reversed.

We turn now to questions raised relating to the propriety of the ruling on the demurrer.

One contention advanced by appellants to the effect the petition discloses such a confusion of theories it fails to state a cause of action has been answered by our conclusion, heretofore announced, that appellee bases her right to recovery on a single theory, namely, the appellants' alleged fraud. Moreover, the same conclusion,

coupled with the fact the Rushes are not parties to the action, requires rejection of another contention the demurrer should have been sustained on the basis of misjoinder of causes of action.

Appellants principal contentions, and we may add those most strenuously argued, are based on the premise the petition fails to state a cause of action. These, keeping in mind that under the circumstances the extent of our power is to determine whether a cause of action has been stated (See *Simmons v. Reynolds*, 179 Kan. 785, 788, 298 P. 2d 345) will be considered in the order in which they are raised.

First, it is argued that the petition alleges no fraudulent representations upon which appellee could reasonably rely and therefore alleges no cause of action. Let us see.

Without again repeating the allegations of the petition, which we pause here to note have been detailed at length for informative purposes and not because we regard such petition as a paragon of pleading, we direct attention to paragraphs 3, 4, 5, 6 and 11, as heretofore quoted. When the allegations of the foregoing paragraphs are considered together with the allegations of paragraph 10 and the provisions of section 4 of the contract (Exhibit "A"), which is a part of the petition and has been heretofore outlined for purposes of emphasis, we are convinced appellants' position on the point now under consideration cannot be upheld. Moreover, we do not believe it can be successfully argued the petition fails to allege actionable grounds for fraud under the rule, heretofore approved by this court (See *Atlas Acceptance Corp. v. Weber*, 138 Kan. 89, 91, 23 P. 2d 479), announced in 23 Am. Jur., Fraud and Deceit, p. 773 § 20, and 12 R. C. L., Fraud and Deceit, p. 240 § 10, where it is said:

"The essential elements required to sustain an action for deceit are, generally speaking, that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage."

The conclusion just announced, in our opinion, is particularly applicable in a case where—as here—under allegations of a petition it is clear that the persons alleged to have made the fraudulent representations relied on were acting in a fiduciary capacity as real estate agents (See, e. g., *Merchant v. Foreman*, 182 Kan. 550, 322

P. 2d 740) and the person to whom the alleged representations were made relied and acted upon those representations by entering into a contract, which it is to be noted was witnessed by one of the parties charged with the fraud, containing provisions such as are to be found in Exhibit "A," section 4, of the involved pleading.

Next, it is urged the petition shows on its face there was no wrongful delivery of the deeds as alleged. The petition (paragraphs 7 and 11) alleges there was and the most that can be said for the contracts, from appellants' standpoint, is that the contents of those instruments with respect to escrow delivery were so ambiguous as to require proof regarding their import. The trial court may well have so considered. Under the circumstances it was not required to hold as a matter of law, as claimed by appellants, that the petition showed on its face there was no wrongful delivery of the deeds.

Finally, it is claimed the petition does not allege facts sufficient to constitute a conspiracy. For purposes of ruling on the demurrer the short and simple answer to this claim is that conspiracy, or no conspiracy, the petition stated a cause of action for fraud which, in and of itself, would require the overruling of the demurrer.

We find nothing in the foregoing contentions or in others advanced by appellants, all of which have been carefully considered, warranting the conclusion that, when all its allegations are surveyed in their entirety and the facts therein set forth are given proper import, the involved petition fails to state facts sufficient to constitute a cause of action for actionable fraud against the appellants. And this, we may add, holds true whether that pleading is liberally or strictly construed. Therefore the trial court's action in overruling the demurrer was proper and must be sustained.

In conclusion it should perhaps be stated that in view of the limited scope of review on appeal from issues such as are here involved we have disregarded, not overlooked, many contentions advanced by the parties respecting the existence of both affirmative and defensive facts and circumstances which they seek to have considered in connection with the involved rulings. Indeed, we have purposely refrained from mentioning such matters in order to avoid saying anything that may prejudice either party in further proceedings relating to the merits of this action, in which we are satisfied issues must be joined under proper pleadings and the cause, if it is tried, submitted under proper instructions based on

facts disclosed by evidence. Whether appellee can obtain all or only part of the relief sought in her petition or sustain the burden of proving her allegations, or appellants establish their defenses with respect thereto, which they have sought to argue in connection with questions pertaining to the propriety of the rulings on the motions and demurrer involved, are not matters with which we are presently concerned under the limited appellate issues involved. They must first be determined by the trial court. All we here hold is that under the facts, conditions and circumstances, set forth and described in the petition, the trial court, for reasons stated in the opinion, did not err in overruling the motions or the demurrer to that pleading.

The rulings and orders from which the appeal was perfected are affirmed.