No. 41,330

Peter Kiewit & Sons' Company, a Corporation, *Appellee*, v. The State Highway Commission of the State of Kansas, *Appellant.*

(339 P. 2d 267)

Opinion filed May 16, 1959.

*Stanley E. Taylor*, of El Dorado, argued the cause, and *W. B. Kirkpatrick*, Assistant Attorney General, and *Jerry Ann Foster*, of Topeka, were with him on the briefs for the appellant.

*A. Harry Crane*, of Topeka, argued the cause, and *Ward D. Martin*, *Arthur L. Claussen* and *Havey D. Ashworth*, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, C. J.: This is an action to recover damages for breach of a written contract between the plaintiff and the defendant.

The action arises out of a public works contract for construction of an Access Defense Project in the City of Wichita. Originally, it was commenced by the plaintiff, Peter Kiewit & Sons' Company. a corporation, against the State Highway Commission of the State of Kansas and the city of Wichita, as defendants, in the District Court of Shawnee County. Summons was duly issued and served on the defendants. Thereafter the City moved to quash service of summons on the ground it was a municipal corporation and subject to suit only in Sedgwick County, where it was situated. This motion was sustained. Following this action plaintiff filed an amended petition against the Commission only. Subsequently the Commission demurred to such pleading on the ground it failed to state facts sufficient to constitute a cause of action in favor of plaintiff and against it. Its demurrer was overruled. Thereupon the Commission filed an answer. Plaintiff then moved to strike certain allegations from that pleading. When this motion was

sustained the Commission filed an amended answer and the plaintiff replied.

With issues joined as indicated the case came on for trial by a jury and the plaintiff adduced its evidence. Thereupon, the Commission demurred to such evidence on the ground it did not establish that it had breached the contract. Upon the overruling of this demurrer the Commisison adduced its evidence which consisted solely of testimony by an individual who was its resident engineer in Wichita prior to and at the time it entered into the involved contract with the plaintiff.

Thereupon the plantiff moved for a directed verdict in the amount claimed in its amended petition on the ground the undisputed evidence established the contract had been breached and it had sustained the damages prayed for. This motion was sustained and, after the jury had returned a verdict as directed, judgment was rendered accordingly. Thereafter defendant filed a motion for a new trial which was overruled. This appeal followed.

The events and circumstances leading up to and giving rise to this lawsuit are essential to its disposition on appeal. The amended pleadings disclose those matters and in the main, when read together, establish the fact there is little, if any, dispute between the parties with respect thereto. Moreover, such pleadings set forth at length the factual background and other matters on which the parties rely to sustain the questions raised on appeal regarding the propriety of the judgment. The amended petition, hereinafter referred to as the petition, is lengthy and in such form its averments cannot be easily summarized. The same holds true of the amended answer, hereinafter referred to as the answer. Therefore, in order that there can be no doubt as to the issues presented for decision on appellate review or confusion with regard to their disposition, we have decided to attach copies of the petition and answer to this opinion as appendixes, identified as "A" and "B" respectively, where the allegations of such pleadings will be available for ready reference and should be read at this point as a part of the opinion.

Since they are described but not set forth at length in the petition (Appendix "A") it will clarify the issues to make additional reference to the Exhibits therein mentioned.

Exhibit "A," which is conceded to be an agreement entered into between the City of Wichita and the Commission for the express purpose of making it possible for the City to participate in federal-

aid funds available for the reconstruction of Oliver Street as a Federal defense road, contains the following provision:

"The City agrees to save the Commission harmless from any and all cost, liability, expense, damage, suits, judgments and claims of any kind whatsoever arising out of or in connection with the performance of this contract, the acquisition of the necessary right of way, the adjustment or removal of utilities or the construction or maintenance of the proposed project, . . ."

Exhibit "B," the contract between the plaintiff and the Commission for construction of the involved Access Defense Project, makes no reference to the City of Wichita and it is clear from its provisions that the plaintiff and the Commission are the contracting parties. In this connection it is to be noted the Commission concedes that it was required to execute the contract in order to make federal-aid benefits available to the City for construction of the project.

Exhibit "C," the order for temporary suspension operations on the project was directed to the plaintiff and signed by the Commission's resident engineer. The reason therein stated for suspending work reads:

"Work has now progressed to point where utility work interferes with every operation, and sufficient excavation has been done so that all utility work can proceed. Work will therefore be suspended until utility work is nearly completed."

Exhibit "D," the demand referred to in paragraph 12 of the petition makes claim for the same damages claimed by plaintiff in paragraph 10 of that pleading.

Exhibit "E," referred to in paragraph 12 of the petition, is a letter addressed by plaintiff to the Mayor and Commission of the City of Wichita, calling attention to the fact it had filed a claim with the Commission for additional compensation in connection with the construction contract, and is of no consequence to the issues here involved.

The first question raised by the appellant is that there is no constitutional or legislative authority for an action such as this to be maintained against the Commission. In connection with the constitutional phase of this Hydra-headed question it directs attention to Art. 11, Sec. 9 of our Constitution providing that the State shall never be a party in carrying on any work of internal improvement except that it may adopt, construct, reconstruct and maintain a state system of highways. Then, conceding that it executed the contract in question, it contends it is immune from any claim or suit arising under its terms because such constitutional prohibition

precludes it from engaging in or carrying on any work of internal improvement on any streets or highways except those which are a part of the state highway system under the provisions of G. S. 1949, 68-406. We believe this claim was laid to rest in *State, ex rel., v. State Commission of Revenue and Taxation*, 163 Kan. 240, 181 P. 2d 532, where, in disposing of a similar contention, it is said:

"We turn now to the questions raised as to the validity of chapters 271 and 272, Laws of 1945. Sections 9 and 10 of article 11 of our constitution read:

" 'Sec. 9. The state shall never be a party in carrying on any work of internal improvement except that it may adopt, construct, reconstruct and maintain a state system of highways, but no general property tax shall ever be laid nor bonds issued by the state for such highways.

" 'Sec. 10. The state shall have power to levy special taxes, for road and highway purposes, on motor vehicles and on motor fuels.'

"It is argued that the statutes in question violate these constitutional provisions by compelling the expenditure of funds on streets and highways not a part of the state highway system. By a statute originally enacted in 1927 (Laws 1927, ch. 255, sec. 6, and several times amended and now appearing as G. S. 1945 Supp. 68-406) the state highway commission was authorized to designate and improve 'a state highway system' consisting of not more than 10,000 miles. Counsel for plaintiff argue that the state highway system so established is synonymous with the words 'a state system of highways' used in our constitution (sec. 9, above quoted), and in effect argue that having established a state highway system, with a limited number of miles, it has no authority to establish an additional secondary road system, as it attempted to do in chapter 272, *supra.* The point is not well taken. It was held in *Heller v. A. T. & S. F. Rld. Co.*, 28 Kan. 625: 'The legislature, as the representative of the public, has plenary power over streets and highways . . .' (syl. ¶ 1). This view has been repeatedly sustained in later decisions of the court which may be found readily from the citator. This accords with the general rule stated in 39 C. J. S. 949, as follows:

" 'The power to establish highways rests primarily in the legislature which may, subject to constitutional restrictions, delegate it to political subdivisions or local agencies, to be exercised in the manner prescribed.'

"And in 40 C. J. S. 25 it is said:

" 'The construction and repair of public roads is a governmental function which may be exercised by the state or delegated to state or local agencies or bodies. . . .

"Other authorities on highway are to the same effect.

"We think the phrase, 'a state system of highways,' in our constitution (sec. 9, *supra*) is broad enough to authorize the state to classify all the highways of the state and to provide for their construction and maintenance either by the state or by any of its political subdivisions, or by any combination of them, as it may deem proper. It is well settled that the state, through its legislature, may exercise any governmental powers not granted to federal government and not prohibited by our constitution. (*Jansky v. Baldwin*, 120 Kan. 332, 243 Pac. 302; *Lemons v. Noller*, 144 Kan. 813, 63 P. 2d 177.) Certainly the power

authorized to be exercised by the constitutional provision was not exhausted by the establishment of the state highway system under G. S. 1945 Supp. 68-406." (pp. 246, 247 and 248.)

The views expressed in the foregoing decisions are confirmed and approved in *State, ex rel., v. Kansas Turnpike Authority,* 176 Kan. 683, 687, 688, 691, 692, 273 P. 2d 198.

For other decisions, holding that the State has given its consent to be sued by an action against the Commission with respect to contracts the Commission is authorized to make or required to take over, see *Anderson Cattle Co. v. Kansas Turnpike Authority,* 180 Kan. 749, 754, 755, 308 P. 2d 172; *Rome Mfg. Co. v. State Highway Comm.,* 141 Kan. 385, 387, 41 P. 2d 761; *State, ex rel., v. State Highway Comm.,* 138 Kan. 913, 917, 28 P. 2d 770; *McCandliss Construction Co. v. Neosho County Comm'rs,* 132 Kan. 651, 296 Pac. 720. For others establishing that our constitution limits, rather than confers, power and hence we must look to it to see what it prohibits instead of what it authorizes see *Lemons v. Noller,* 144 Kan. 813, 816 to 818, incl., 63 P. 2d 177; *State, ex rel., v. Anderson,* 180 Kan. 120, 125, 299 P. 2d 1078.

From what has been stated it appears there is nothing in the provisions of our constitution (Art. 11, Sec. 9) prohibiting the bringing of an action on a contract which the Commission has entered into pursuant to valid legislative authority.

Thus we come to the second phase of the question now under consideration. Notwithstanding its execution of the contract sued on (Exhibit "B") as a principal, and the concessions, to which we have heretofore referred, made with respect to its reasons for doing so, the essence of all contentions advanced by appellant on this point, as we understand them, is that it had no legislative power or authority to execute the contract in such manner as to bind itself as a principal, hence this action to establish liability for a breach of its terms cannot be maintained against it.

In support of its position on this point appellant first directs our attention to G. S. 1949, 68-407, and states in substance that under its terms all it is authorized to do is to perform all work, or enter into, perform and require the performance of all contracts incident to the construction, improvement, reconstruction and maintenance of a state highway system. Conceding this section of the statute contains such authorization it is to be noted appellant either overlooks or intentionally ignores additional requirements of the same

section providing that it (the Commission) "shall take such steps as will give the provisions of this act full force and effect and do and perform all other duties required by law."

Next, stating that the only authorization it knows of for the State to participate in any manner whatsoever in a project, such as the one here involved, is contained in an enabling act, appellant quotes a portion of G. S. 1955 Supp., 68-402b, which reads:

"Authority is hereby granted to the several counties and cities in this state to enter into contracts through or with the state highway commission, so as to enable them to participate in all the benefits to be secured from federal-aid funds, or funds made available from the federal government for the purpose of being used on roads and streets. Contracts so entered into by the boards of county commissioners or city authorities of the several counties or cities, shall be binding both on them and their successors. Authority is specifically granted the state highway commission to negotiate and enter into contracts with the federal government or any of its constituted agencies and take all steps and proceedings necessary, in order to secure the benefits for the several counties or cities above mentioned . . ."

We are forced to disagree with appellant's statement to the effect the foregoing statute furnishes the only authorization for it to participate in projects of the character involved.

See G. S. 1949, 68-401 (amended and now G. S. 1957 Supp., 68-401), which reads:

"That the assent of the legislature is hereby given to the provisions and requirements of the act of congress known as the federal-aid road act, approved July 11, 1916, entitled 'An act to provide that the United States shall aid the states in the construction of rural post roads, and for other purposes,' and also the provisions of the acts of congress known as the federal-aid highway act of 1944 and the federal-aid highway act of 1948, and all acts amendatory thereof or supplemental thereto."

See, also, G. S. 1949, 68-402 (amended and now G. S. 1957 Supp., 68-402), which reads:

"That the state highway commission is authorized and empowered to enter into all contracts and agreements necessary to co-operate with the public roads administration, or other federal agencies and to do and perform all other acts required of a state highway department to obtain all benefits under the terms and provisions of any federal legislation. The treasurer of state is hereby authorized and empowered to receive and disburse all money apportioned to the state or any city or political subdivision thereof in accordance with the provisions of any act of congress for road, street or highway purposes." (Emphasis supplied.)

When all the foregoing sections of our statute are read together, and it is kept in mind it is conceded existing government regulations

required the appellant to execute the involved contract, just as it did, before federal funds would be made available for the Defense Access Project in question, we have little difficulty in concluding appellant's contention there is no legislative authority for this action lacks merit and cannot be upheld.

We reach a like conclusion with respect to another contention, strenuously argued by appellant, that, notwithstanding the contract (Exhibit "B"), executed between it and the appellee, it did not by that agreement undertake, prosecute and complete the project acting in and of itself for the reason such contract was not, and never was, a state highway contract. Based on the foregoing authorities and what has been heretofore stated we believe such agreement was executed, by the appellant, as a contract for the state system of highways in accord with statutes enacted by the legislature with the view of making that action possible and that, having done so, the appellant cannot be heard to say it could incur no liability whatsoever for an alleged breach of its terms under the constitution and laws of the state. See *State, ex rel., v. State Commission of Revenue and Taxation*, supra. See, also, *Farmers Union C. C. E. v. Director of Revenue*, 163 Kan. 266, 268, 181 P. 2d 541, where it is said that the legislature has full power to classify the highways of the state for purposes of construction as it desires. And see *State, ex rel., v. State Highway Comm.*, 138 Kan. 913, 917, 920, 28 P. 2d 770, where, contrary to appellant's claims, it was long ago established that under the provisions of Art. 11, Sec. 9 of our Constitution the state might be permitted to carry on works of internal improvement so far as they pertained to streets and highways. Moreover, and again mindful of the fact it is conceded appellant was required, under existing government regulations, to execute the contract sued on in its official capacity as the State Highway Commission in order to make funds available for the involved project, we are inclined to the view that to accept its claims respecting the status of the contract would not only permit the Commission to break faith with the government but eventually result in the latter's refusal to permit the state to participate in the benefits of federal-aid funds for use on streets and highways.

In passing it should be noted that, contrary to its present position, the appellant itself recognized that the Oliver Street project was one involving the state system of highways by retaining continuing power and jurisdiction over its maintenance after completion. Paragraph six of its contract with the City (Exhibit "A")

expressly provides that when such project is completed and approved the City will maintain it in a manner satisfactory to the Bureau of Public Roads *and the Commission* or their authorized representatives and will make ample provision each year for its maintenance and, upon receipt from the state highway engineer of notification of any unsatisfactory maintenance condition, the City will begin the necessary repairs within thirty days and prosecute the work continuously until it is completed in a manner satisfactory to the Commission's requirement. Further evidence of this fact is to be found in Paragraph seven, heretofore quoted, of the same contract wherein the City agrees to save the Commission harmless from all liability which, among other things, includes maintenance of the proposed project.

After disposing of contentions made respecting constitutional or legislative power and authority, it can now be stated that upon examination of the entire record the clear and inescapable facts are that appellant, as one of two principals, did enter into a ninety day completion contract, containing a heavy per day penalty clause, with appellee for construction of the Oliver Street project under the terms of which it agreed to either move or have the owners remove existing public utility water lines on such project; that after appellant had issued a work order and, pursuant thereto, appellee had moved onto the project site and commenced construction it developed that certain water lines that had to be moved in order for construction work to continue had not been moved; that appellant did not move or see to it that the owners removed such water lines in time to avoid a complete shutdown of work on the project; that as a result appellant ordered appellee to stop work within a month after construction had started; that thereafter a long delay (80) days ensued; and that as a consequence appellee sustained damages of the character alleged in its petition.

In a further attempt to avoid liability under the contract appellant points out, as must be conceded, that such agreement included by reference, among other things, its Standard Specifications for State Road and Bridge Construction as well as the plans for the project. It then directs attention to Paragraphs 4.6 and the first paragraph of 5.7 of its Standard Specifications (quoted in paragraph 3 of Appendix "A") and, by arguments based in the main upon its erroneous concept of the nature and character of such contract, contends that its only obligation, under its terms, with respect to the removal of public utilities, including the water lines

in question, was to notify the owners to remove them. We do not agree. Nor are we inclined to labor arguments advanced by appellant on the point. It suffices to say that a careful examination of the contract, including the matters and things incorporated therein by reference and consideration of all arguments advanced by the parties, convinces us that appellant agreed, and it was its obligation, to either move or see to it that the owners removed the water lines in question in time to permit appellee to carry out its obligations under the terms of the contract; and that appellant's failure to do so, which cannot be denied, resulted in a breach of such agreement for which appellee had a right to maintain the present action to establish the damages sustained thereby.

Next, and for the same purpose as indicated in the first sentence of the foregoing paragraph of this opinion, appellant directs attention to the third paragraph of 5.7 of its Standard Specifications which, although it is set forth in Appendix "A," we requote at this point for purposes of emphasis. It reads:

" 'It is understood and agreed that the Contractor has considered in his bid all of the permanent and temporary utility appurtenances in their present or relocated positions and that no additional compensation will be allowed for any delays, inconveniences, or damage sustained by him due to any interference from said utility appurtenances.' "

Appellant argues that, under the language of the above quoted specification, appellee has waived all claims for damages sustained by it due to delay by reason of failure to remove the water lines included in the plans and specifications. Again we must disagree. This specification, as we interpret it, has reference to damages sustained by the contractor for interference from water lines, wherever situated, when relocated, or left on the project in their original position, in accord with the plans and specifications. It is in no sense to be construed as having application to damages caused by failure on the part of the contractee to perform its contractual obligation to move the water lines or to see to it that they were moved as contemplated by the plans and specifications.

Much space is taken up in appellant's brief with arguments to the effect the trial court committed reversible error in sustaining the motion to strike certain allegations from its original answer. It is neither necessary nor required that we here detail the allegations stricken, the grounds of the motion, or the reasons given by the trial court for its ruling. It suffices to say we have examined the original answer, as well as the motion to strike, and considered

the ruling with respect to the motion, in the light of what has been heretofore stated and held and that, after doing so, we are satisfied such ruling did not deprive appellant of any defense available under the existing facts and circumstances, or result in prejudice to its substantial rights. It follows this claim lacks merit and cannot be upheld. See, *e. g., Broberg v. Boling,* 183 Kan. 627, 331 P. 2d 570; *Marshall v. Duncan,* 182 Kan. 540, 322 P. 2d 762; *Nausley v. Nausley,* 181 Kan. 543, 545, 313 P. 2d 302; *Nardyz v. Fulton Fire Ins. Co.,* 151 Kan. 907, 101 P. 2d 1045; *Nelson v. Schippel,* 143 Kan. 546, 56 P. 2d 469.

Appellant strenuously argues that the trial court erred in sustaining the motion for a directed verdict, and in directing a judgment for the amount of the damages claimed, on what it terms was the inconclusive evidence presented. At the outset it should be stated that these claims must be determined on the basis of what has been heretofore stated and held with regard to appellant's liability under the contract and that we are not disposed to burden our reports with repetitious statements respecting such matters or deal with the numerous arguments advanced by appellant, predicated on what we have there determined is an erroneous concept of its responsibilities and obligations under the involved contract.

It cannot be denied that at the time of the ruling on the motion for a directed verdict the trial court had before it the contract in question and undisputed evidence, establishing what we have heretofore referred to in the opinion as the clear and inescapable facts. Under such circumstances the issues between the parties, as to their rights, duties and obligations under the contract, became questions of law for the trial court's determination and it was its duty to take such issues from the jury.

Nor can there be any dispute regarding the state of the evidence when the trial court, on motion of the appellee, directed judgment establishing liability under the contract for the amount of the damages claimed in the petition. The record discloses that appellee adduced testimony which, we pause here to note, we assume the trial court, as was its province, had the right to believe, established that, as a result of appellant's breach of the contract in failing to move the involved water lines or see to it that they were moved, appellee had sustained damages in the amount claimed in its petition. Appellant then adduced its evidence and rested its cause without making any attempt whatsoever to deny or in any way refute the testimony of appellee's witnesses respecting the amount of

damages sustained. In view of the claims now made by appellant respecting such damages we are at a loss to know why it did not introduce evidence on that subject at the trial but, since we are bound by the record in the court below, it is not our province to here debate that question. In the face of the record before us we are constrained to hold that, since there was no dispute in the evidence respecting the amount of damages sustained, the trial court's action in directing judgment, based on that evidence, was proper. Indeed we believe that, under the existing facts and circumstances, it had no other alternative.

All contentions advanced by appellant in support of its claims of error in the overruling of its demurrer to the petition, its demurrer to appellee's evidence, and its motion for a new trial have been determined by what has been heretofore stated and held.

Finally it should be stated we have not commenced to here answer all arguments advanced by zealous counsel for the parties in support of their respective positions on this appeal. Many of them have become immaterial, and purely academic in view of the conclusions heretofore announced, and for that reason require no discussion. Others, not regarded as of sufficient importance to warrant space in the opinion, have been considered and rejected.

We find no error in the record which warrants or compels a reversal of the judgment. Therefore it must be affirmed and it is so ordered.

## APPENDIX "A"

### Amended Petition

1. Comes now the plaintiff Peter Kiewit Sons' Company and states that it is a corporation duly organized and existing under and by virtue of the laws of the State of Nebraska, with its office and principal place of business at 1024 Omaha National Bank Building, Omaha, Nebraska, and that it is duly qualified, authorized and permitted to do business in the State of Kansas; that the defendant the State Highway Commission of Kansas is a division of the state government of the State of Kansas having its office and place of business at the Masonic Temple Building in the City of Topeka, Shawnee County, Kansas.

2. For its cause of action, the plaintiff alleges and shows to the Court that on or about the 11th day of November, 1952, the duly elected, qualified and acting mayor and commissioners of the City

of Wichita, Kansas, in official action approved by the majority of the said board of commissioners decided and determined to seek the assistance and representation of the State Highway Commission of Kansas in securing federal aid funds for the paving of Oliver Street from a point near George Washington Boulevard to the intersection of Lincoln Street; that on said date at a lawful session of the board of commissioners of the City of Wichita, the mayor was duly authorized by a majority of said board to enter into a contract with the State Highway Commission of the State of Kansas for the paving of said street and highway as a federal aid project; that thereafter and on or about the 26th day of November, 1952, the said City of Wichita made and entered into a certain contract in writing with the State Highway Commission of Kansas, whereby the City did request said commission to represent it and act as its agent in obtaining the approval and construction of said project, known as 87-AD 2(1) PART II and said City did agree to obtain the right-of-way for the same and to move or adjust or caused to be moved any fences, structures, pipe lines or encroachments necessary to the construction of said project and to pay the costs, expenses, damages and claims by reason of said construction project, and a true and correct copy of said contract is attached to the original petition filed herein marked "Exhibit A" and is made a part hereof by reference as though fully set out herein. That under the terms of said contract, the City of Wichita, constituted and appointed the said State Highway Commission of Kansas as its agent, to undertake, prosecute and complete said work project above described in the Ctiy of Wichita, Kansas, and said City authorized, ratified and confirmed all acts of said State Highway Commission of Kansas performed under said contract. The said State Highway Commission of Kansas agreed to supervise said contract, as required by the Bureau of Public Roads, and to administer the payments due to contractors. The said State Highway Commission was to have direct supervision of said project and agreed to undertake, prosecute and complete said project.

3. The plaintiff further alleges that on or about February 2, 1953, the State Highway Commission of Kansas gave notice to contractors of the request of bids and proposals for the construction of said project in the City of Wichita, Sedgwick County, Kansas, having obtained the approval thereof as a federal project by the said Division of Highways. That thereafter, the bid and proposal of the plaintiff for the construction of said street and highway was

accepted by the defendant State Highway Commission of Kansas and the contract was duly made and entered into by and between the plaintiff and the State Highway Commission of Kansas on March 20, 1953, and a true and correct copy of said contract is attached to the original petition filed herein marked "Exhibit B" and made a part hereof by reference as though fully set out herein. The plans and specifications, the advertisement and proposal were by reference made a part of said contract. That according to the terms of said proposal, all work was to comply with the Standard Specifications for State Road and Bridge Construction, Edition 1951. That according to the plans and specifications, certain water lines and other public utility lines were located on the proposed right of way.

Paragraph 4.6 of said Standard Specifications for State Road and Bridge Construction read in part as follows:

"*Removal and disposal of structures and obstructions.*—All buildings, public utilities or any other private or public improvements which are to be removed from the right-of-way and replaced or reconstructed at new locations, shall be removed by the State Highway Commission or by the owners under a separate agreement unless otherwise noted on the plans."

Paragraph 5.7 of said Standard Specifications for State Road and Bridge Construction read as follows:

"*Co-operation with Utilities.*—It shall be the State's duty to notify all utilities, all pipe-line owners, or other parties affected, to make all necessary adjustments of the public or private utility fixtures, pipeline, or other appurtenances within or adjacent to the limits of construction.

"Water lines, gas lines, wire lines, service connections, water and gas meter boxes, water and gas valve boxes, light standards, cable ways, signals, and all other utility appurtenances within the limits of the proposed construction are to be moved by the owners at their own expense, except as otherwise provided for in the special provisions or as noted on the plans.

"It is understood and agreed that the Contractor has considered in his bid all of the permanent and temporary utility appurtenances in their present or relocated positions and that no additional compensation will be allowed for any delays, inconvenience or damage sustained by him due to any interference from said utility appurtenances."

Paragraph 5.4 of said Standard Specifications for State Road and Bridge Construction reads in part as follows:

". . . If there is a discrepancy between the standard specifications and the supplemental specifications, the supplemental specifications are to govern. . . ."

"The supplemental specifications on page 3 thereof under the heading 'General Note' read in part as follows:

"Encroachments such as fences, buildings, telephone, telegraph and power lines shall be moved by the owners. . . ."

"All water lines less than three feet below the surface of the proposed grade or lines not constructed of lead, copper, cast iron or wrought iron or lines not in good condition shall be lowered, replaced or moved beyond the limits of the road bed by the owners."

4. Plaintiff further alleges that thereafter, and on or about May 18, 1953, pursuant to work orders from the defendant, State Highway Commission of Kansas, plaintiff commenced its performance of said contract for the construction of said project, by moving in equipment, employing labor, obtaining materials and supplies, and placing itself in position to promptly and efficiently perform said contract. That plaintiff started construction on said project and proceeded with said construction work until on or about June 19, 1953, when it was ordered and directed to cease said construction work and to temporarily suspend such operations by the defendant, the State Highway Commission of Kansas. That a copy of such suspension order is attached to the original petition filed herein marked "Exhibit C" and made a part hereof by reference as though fully set out herein. That the plaintiff was further ordered and directed by the defendant, the State Highway Commission of Kansas, to protect said work and to protect the public against damage or injury by reason of said construction work, and to stand by and remain ready and in position to complete said project, when ordered to do so by said defendant.

5. Plaintiff further alleges that the defendant, the State Highway Commission of Kansas, in its capacity of supervisor of said project, failed and neglected to move or cause to be moved, various pipe lines and utility encroachments, particularly pipe lines, meters, and water service of the Wichita Water Company, out of the right-of-way on Oliver Street, on said project, or to change said utility lines so that the same would not obstruct or interfere with the construction work on said project. That the failure and neglect of said defendant to move, and adjust, or cause to be removed and adjusted, said utility lines, resulted in the temporary suspension of said construction work, as ordered by the defendant, State Highway Commission, as above set out. That under said standard specifications and supplemental specifications, it was the duty of the defendant, State Highway Commission of Kansas, to move or cause to be moved all utility encroachments, and the plaintiff relied thereon, and said defendant in entering into said agreement im-

pliedly warranted that the site would be available for work at the time of the issuance of the work order by the said defendant.

6. Plaintiff further alleges that in accordance with its contract and the temporary suspension order issued by the State Highway Commission of Kansas, the plaintiff was required to suspend work, to maintain barriers, lights, signals and signs to protect said work and to protect the public against injury and damage, and to protect itself and the State Highway Commission of Kansas and the other defendants against liability and claims by reason of injury for damage to persons or property, by reason of the suspended and unfinished condition of said construction project, all of which the plaintiff did.

7. Plaintiff further alleges that it was ready, able and willing at all times to perform said contract, and that it was ordered and directed to suspend operations by order of the defendant, State Highway Commission of Kansas, through no fault of its own, but by reason of the breach of said contract by said defendant, as set out above. That said plaintiff was prevented from carrying out said contract and completing same within the time originally specified in said contract, which was September 10, 1953, by reason of the failure and neglect of said defendant to perform said contract by removing or causing to be removed, said utility encroachments. That the delay and resulting damage to the plaintiff was caused by the failure and neglect of the defendant, State Highway Commission of Kansas, to move or to cause to be moved such utility encroachments. That said damages were not caused by the location of utility appurtenances in their present or relocated positions, but was caused by the failure to move such appurtenances in order that plaintiff could carry on the work on said project. That although the plaintiff waived any claim for damages by reason of delay or inconvenience because of present or relocated positions of utility appurtenances as set out in Paragraph 5.7 quoted above, the plaintiff did not waive any claim for damages by reason of the failure of the defendant to move such appurtenances as it agreed to do.

8. That by reason of the breach of said contract by said defendant, work on said project was suspended until on or about September 6, 1953, and thereafter plaintiff recommenced work on said project, at the request and order of the defendant, State Highway Commission of Kansas. That even though operations were started again, plaintiff's work was hampered and interfered with by

reason of the fact that water service connections had not been lowered. That by reason of said delay, plaintiff was unable to complete said project until December, 1953.

9. That when plaintiff entered into said contract and submitted its bid on said project, it was with the understanding and on the representation of the defendant State Highway Commission of Kansas, that said work was to be performed during the spring and summer months of 1953. By reason of the acts of the defendant, as above set out, which prevented the plaintiff from performing said contract during said spring and summer months, the plaintiff was forced to and did expend additional sums for labor and equipment, by reason of having to perform said work during the fall and winter months, and such costs were increased by reason of inclement weather.

10. That the plaintiff suffered damage by reason of the breach of said contract by the defendant, its failure and refusal to move or cause to be moved utility encroachments, and its order to plaintiff to suspend operations, in the following particulars:

a. That the interruption and interference with the work of the plaintiff by reason of the conduct of the defendant decreased the production of the plaintiff which resulted in an increased cost of .094 cents per yard, or a total cost, expense and damage of $5,420.98, during the period of May 25, to October 14, 1953.

b. That said delay caused by the defendant prevented the installation of the granular base during the dry weather in the middle of the summer so that the plaintiff was required to install the same in the rainy, wet and moist weather during the fall months which increased the actual cost and expense of this operation by .025 per square yard, or an increased cost and damage in the amount of $5,816.68.

c. That the plaintiff under and by virtue of the obligations and provisions of its contract was required to have men, labor and machinery and to pay standby pay for superintendents, foremen, office men and mechanics and to maintain barricades, flares, signs, etc., to the expense and damage of the plaintiff in the sum of $12,374.75.

d. That the plaintiff was further damaged by reason of additional men and equipment plus decreased production due to weather and time of year caused by the delay and interference of the defendants, which increased the cost of product 17¢ per square yard for operating expenses which made additional cost, damage and expense to the plaintiff of $19,813.05.

11. That by reason of the premises the plaintiff is entitled to recover of and from the defendant, State Highway Commission of Kansas, its damages herein in the total sum of $43,426.46.

12. Plaintiff further alleges that it made demand upon defendant, the State Highway Commission of Kansas, for said sum, both

orally and in writing; that it made demand in writing upon said defendant on or about February 22, 1954, and that a copy of said demand is attached to the original petition marked "Exhibit D" and made a part hereof as though fully copied herein. Plaintiff further alleges that although demand has been made upon said defendant, that it has wholly failed, neglected and refused to pay the same and still refused and that said amount is still due and owing to the plaintiff from said defendant. The plaintiff also refers to and makes a part hereof as though fully copied herein "Exhibit E" which is attached to the original petition.

WHEREFORE, plaintiff prays judgment against the defendant, State Highway Commission of the State of Kansas, in the sum of $43,-426.46 together with the costs of this action and such other and further relief as to the Court may seem just and equitable.

## APPENDIX "B"

### AMENDED ANSWER

Comes now the defendant in the above entitled action and for answer to the amended petition of plaintiff herein alleges and states:

1. That defendant denies each, every, all and singular the allegations and averments contained in said amended petition except such, and only such, as are hereinafter specifically admitted.

2. That the defendant admits paragraph 1, paragraph 2 and paragraph 3 of the amended petition.

3. That by virtue of G. S. 1951 Supp., 68-402b the several counties and cities of the state were authorized to contract through or with the State Highway Commission so as to enable such local authorities to participate in all the benefits to be secured from Federal-Aid funds. Under said statute the State Highway Commission was authorized to contract with the Federal Government to obtain such Federal-Aid benefits for said local authorities. That the Federal Government in allocating funds to local authorities for road and street purposes will disburse funds only through the State Highway Commission and the Federal Government further requires that all such local work be done under the supervision of and according to the regulations and specifications of the State Highway Commission. That the State Highway Commission must pay from the State Highway fund that sum received from the Federal Government for such local improvements.

4. That the plans for said project are a part of the contract between the parties and that the general note on page 3 of said plans reads in part as follows:

"Encroachments such as fences, buildings, telephone, telegraph and power lines shall be moved by the owner . . .

"All water lines less than 3 feet below the surface of the proposed grade or lines not constructed of lead, copper, cast iron, wrought iron or lines not in good condition shall be lowered, replaced or moved beyond the limits of the road bed by the owner";

5. That on or about January 28, 1953, the State Highway Commission notified all interested public utilities, etc., of the forthcoming project on Oliver Street and furnished said public utilities, etc., with plans of the project in order that any removals or relocations could be made by said public utilities, etc. That when the project was advertised, the defendant contacted each utility by telephone further advising them of the project. That on or about March 13, 1953, the defendant notified the City of Wichita and the County of Sedgwick of that fact that the contracts for the project herein had been awarded and work would be started in the near future. That on or about March 30, 1953, the public utilities concerned were given written notice to proceed with their work. That during all times in question here the defendant co-operated fully with the plaintiff and the public utilities involved concerning all the removals and relocations incident to the project.

6. That on or about June 11, 1953, lines of the Wichita Water Company were uncovered by plaintiff in the construction of the project which would interfere with the further construction and the completion of such project. That defendant duly notified the Wichita Water Company of said fact and directed an investigation by said company in order to determine to what degree these lines interfered with further construction through the project. That the necessity for relocation or removal of these lines or mains of the Wichita Water Company which ran the length of the project was not anticipated by any of the parties. That upon the discovery of this fact the defendant duly notified said owner and further notified the City of Wichita and that the defendant performed with dispatch and in the proper manner, all acts it was bound to do pursuant to the contract herein.

Wherefore, having fully answered defendant prays the plaintiff take naught by its amended petition filed herein and that it have and recover its costs.